UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAREN SIMON,

       Plaintiff,

CASE NO.: 6:14-cv-2125-Orl-37GJK

v.

**DISPOSITIVE MOTION**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

_____/

## PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT
## AND SUPPORTING MEMORANDUM OF LAW

Plaintiff KAREN SIMON ("Simon"), by and through her undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully moves this Court to enter summary judgment in her favor on Counts I and II of the Second Amended Complaint. As grounds for this Motion, Simon respectfully submits the undisputed record evidence unequivocally establishes Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm") breached its duty to defend and provide coverage to its insured, Lori Wilkins ("Wilkins"), in the underlying personal injury action filed by Simon. As further grounds for this Motion, Simon states as follows:

## I. SUMMARY OF LEGAL ARGUMENT

On January 3, 2006, State Farm was notified that its insured, Wilkins, had been involved in an automobile accident with Simon earlier that day. State Farm opened a claim file and, thereafter, discussed Simon's claim with her attorneys, reviewed Simon's medical records, entered into settlement negotiations, and even offered money to settle Simon's

bodily injury claim. On September 23, 2009, State Farm discovered a lawsuit had been filed by Simon against Wilkins in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida. Despite its actual knowledge of this lawsuit, and despite the fact its Policy required it to "defend any suit against an insured" for covered damages, State Farm did not retain legal counsel to defend Wilkins.

While State Farm contends it had no duty to defend Wilkins before she was formally served with the summons and complaint, this position is contrary to the Policy language and is unsupported by relevant case law. As Simon will establish herein, State Farm's duty to defend Wilkins was triggered when it discovered a lawsuit had been filed against its insured. State Farm breached this duty when it failed to retain counsel to defend Wilkins and left her unprotected, thus resulting in a default judgment in excess of $2 million. And, because State Farm failed to comply in good faith with the terms of its Policy, it cannot rely on any alleged lack of cooperation by Wilkins in an attempt to avoid its coverage obligations.

## II. UNDISPUTED FACTUAL CHRONOLOGY[1]

1.    On January 3, 2006, Plaintiff Karen Simon was involved in an automobile accident with Lori Wilkins. (Second Am. Complaint, ¶4, Doc. 22) (Martinez Depo., p. 18) (Spierto Depo., p. 78).

2.    At the time of the accident, Wilkins was insured by an automobile liability policy issued by State Farm (Policy #861 2261-E04-59J) (the "Policy"). (Second Am. Complaint, ¶6 & Exhibit 1, Doc. 22).

---

[1] Cited pages from the depositions of Adrian Martinez, Lisa Spierto, Ryan Hayes, and Lori Wilkins, along with the cited exhibits to those depositions, are attached hereto as Exhibits "A," "B," "C," and "D," respectively.

3. According to the Policy, State Farm agreed to "defend any suit against an insured" seeking damages for bodily injuries caused by an automobile accident.[2]

4. State Farm was immediately notified of the accident. (Spierto Depo., pp. 19-21).

5. State Farm also spoke with Wilkins about the accident and sent a representative to her home in order to take photographs of her vehicle. (Spierto Depo., p. 21) (Wilkins Depo., pp. 48, 57-58, 60).

6. By the end of February 2006, State Farm not only knew about the accident, but also knew Simon had retained Attorney Melendez and would likely pursue a bodily injury claim against Wilkins. (Spierto Depo., pp. 21- 22).

7. On or about September 7, 2006, Attorney Melendez sent a demand letter to State Farm for its policy limits. He enclosed copies of Simon's medical records and bills for State Farm's evaluation. (Martinez Depo., pp. 20-21) (Spierto Depo., p. 30). A week later, State Farm made a counteroffer to settle the case for $2,000.00. (Martinez Depo., p. 22) (Wilkins Depo., p. 61)(Spierto Depo., p. 30).

8. On or about December 12, 2006, Attorney Charles Smith of the Van Dingenen law firm notified State Farm of his representation of Simon. Over a period of a few months, Attorney Smith and State Farm discussed the case and engaged in settlement negotiations. (Martinez Depo., pp. 23-26, 28, 30 & Exhibits 4, 16, 17, 19) (Wilkins Depo., p. 62)(Hayes Depo., pp. 37-38 & Exhibit 2).

9. On or about March 5, 2008, State Farm was notified the Morgan & Morgan

---

[2] A copy of the entire State Farm Policy was previously filed as Exhibit "1" to Plaintiff's Amended Complaint. The page from the State Farm Policy which contains the defense language pertinent to this Motion is attached hereto as Exhibit "E."

law firm had taken over Simon's legal representation. (Spierto Depo., pp. 45-46, 48) (Hayes Depo., p. 39 & Exhibit 3) (Martinez Depo., pp. 32, 40 & Exhibit 20). Morgan & Morgan asked State Farm for Wilkins' insurance information, including a copy of Wilkins' policy. State Farm responded with the requested information on March 21, 2008. (Spierto Depo., pp. 46-47)(Hayes Depo., p. 40 & Exhibit 4)(Martinez Depo., p. 33 & Exhibit 21).

10.     On September 24, 2008, State Farm representative Adrian Martinez attempted to call Morgan & Morgan to discuss Simon's claim. Mr. Martinez claims the law firm's phone was disconnected so he was unable to reach Simon's attorney. Mr. Martinez's file notes for that day state as follows; "Based on the impact, causation issues, and the fact that the claimant was previously mailed a SOL letter,[3] I am closing the file." (Martinez Depo., pp. 41-42 & Exhibit 4) (Spierto Depo., p. 50).

11.     In this regard, on October 3, 2008, Mr. Martinez inexplicably closed State Farm's claim file, even though he knew of Simon's pending claim and knew Simon had retained Morgan & Morgan to represent her. (Martinez Depo., pp. 44-45)(Spierto Depo., p. 52).

12.     Two months before State Farm closed its file, on or about August 8, 2008, Simon had filed a personal injury lawsuit against Wilkins in the Circuit Court in and for Polk County Florida (Case No. 08-CA-007721). (Hayes Depo., p. 50 & Exhibit 5).

13.     State Farm was notified of this lawsuit in September 2009. Specifically, on September 23, 2009, State Farm received a copy of a September 16, 2009 letter from Simon's

---

[3] The statute of limitations governing a negligence action based on an automobile accident is four years; accordingly, the statute of limitations on Simon's claim against Wilkins would not have expired until January 3, 2010. See §95.11(3)(a), Fla. Stat.

attorney, Attorney Ryan Hayes with Morgan & Morgan, to the Honorable Karla F. Wright, the presiding judge. This letter concerned Simon's need for an extension of time to serve Wilkins and enclosed the following two documents: (1) a Motion to Extend Time for Service of Process; and, (2) a proposed Order Granting Motion to Extend Time For Service of Process. (Martinez Depo., pp. 47-48, 50 & Exhibit 22) (Spierto Depo., pp. 58-60)(Hayes Depo., p. 54 & Exhibit 7).[4]

14.     Judge Wright granted Simon's Motion to Extend Time for Service of Process and gave Simon until January 22, 2010 to serve Wilkins with the summons and complaint. (Martinez Depo., pp. 55-56 & Exhibit 23)(Hayes Depo., p. 56, Exhibit 8). State Farm received a copy of the signed Order on September 23, 2009. (Martinez Depo., pp. 56-57 & Exhibit 23)(Spierto Depo., p. 66 & Exhibit 23).

15.     Accordingly, as of September 23, 2009, State Farm knew Simon had filed a lawsuit against Wilkins in the Circuit Court in and for Polk County, Florida and was, thus, pursuing her bodily injury claim in a court of law. State Farm also knew the case name and number assigned to the lawsuit, the identity of the presiding judge, and the identity of the attorneys representing Simon. (Spierto Depo., pp. 60-61)(Martinez Depo., pp. 48-51, 63-64).

16.     Despite this knowledge, State Farm did not retain a lawyer to defend Wilkins "because she had not been served yet." (Martinez Depo., pp. 68, 156).

17.     State Farm knew, however, that the Court had given Simon only until January 22, 2010 to serve Wilkins and also knew that, if and when Wilkins was served with the complaint, someone would have to respond within twenty (20) days or a default could be

---

[4] A copy of the letter, along with the enclosed Motion and Order are attached hereto collectively as Exhibit "F."

entered against Wilkins. State Farm knew it was important to determine if Wilkins had been served. (Martinez Depo., p. 59).

18.     Nevertheless, State Farm never called the clerk of court, never checked the court file to figure out the status of service, and never requested copies of the suit papers from the court file. (Martinez Depo., pp. 59-60, 66-67) (Spierto Depo., p. 119).

19.     Moreover, no one at State Farm ever called Simon's attorney at Morgan & Morgan to inquire about the status of service on Wilkins. (Martinez Depo., p104) (Hayes Depo., p. 150).

20.     Over the next few months, State Farm tried unsuccessfully to contact Wilkins. These attempts were unsuccessful, in large part, because State Farm had incorrect contact information for Wilkins. (Wilkins Depo., p. 60)(Martinez Depo., pp. 51, 52, 61, 72, 83, 92 & Exhibit 4)(Spierto Depo., pp. 58, 61, 75-76). However, even if State Farm's letters had been delivered to Wilkins, none of the letters notified her that a lawsuit had been filed against her. (Martinez Depo., pp. 86, 89-90) (Spierto Depo., pp. 63-64, 77-78, Exhibit 25).[5]

21.     On December 28, 2009, State Farm representative Adrian Martinez spoke with Attorney Ryan Hayes, Simon's attorney at Morgan & Morgan, about possible settlement of Simon's claim against Wilkins. (Martinez Depo., p. 103)(Spierto Depo., p. 135). During this phone call, Mr. Martinez increased State Farm's offer to $4,000. (Martinez Depo., p.

---

[5] On September 23, 2009, after he learned a lawsuit had been filed against Wilkins, Adrian Martinez of State Farm sent a letter to Wilkins and her husband which stated: "As a result of the loss referenced above, a bodily injury claim has been presented seeking compensation under your automobile liability policy. . . A *potential* exists for the attorney representing the injured party to file a complaint / lawsuit against you. *If* a lawsuit is filed, it will be served upon you." (Martinez Depo., p. 64, Exhibit 24) (Spierto Depo., p. 62, Exhibit 24). The letter informed Ms. Wilkins to please accept service and to notify State Farm immediately. (Spierto Depo., pp. 62-63). The letter also stated "Pursuant to your insurance policy, we will provide you a defense for all covered claims resulting from this loss."

103)(Hayes Depo., pp.69-76). Mr. Martinez's file notes state: "Claimant Simon had a sub slip/fall loss which resulted in surgery. Bills are over 300k. He will get back to me regarding settlement." (Martinez Depo., p. 103)(Spierto Depo., pp. 88-89).

22.    Attorney Hayes never heard from State Farm again after this phone call. (Hayes Depo., p. 151).

23.    Wilkins was served with the summons and complaint on December 30, 2009 at 8:50 a.m. (Wilkins Depo., p. 110)(Spierto Depo., p. 102, Exhibit 26).

24.    It is undisputed that, at 9:54 a.m., within approximately one hour of being served, Wilkins called State Farm and spoke with Adrian Martinez. (Spierto Depo., 92)(Martinez Depo., p. 107)(Wilkins Depo., pp. 18, 66, 70-71, 83-85, 87, 110-113, 117, 118, 122-123).

25.    While there is a dispute as to whether Wilkins informed Mr. Martinez that she was served with suit papers,[6] it is undisputed both Wilkins and Martinez knew that a complaint had been filed by Simon against Wilkins.

26.    State Farm never spoke with Wilkins after December 30, 2009, even though it knew Simon had been given until January 22, 2010 to serve her. (Spierto Depo., p. 119).

27.    After December 30, 2009, State Farm did not have any further

_____

[6] Wilkins testified she informed Mr. Martinez she had been served with suit papers, and he told her not to worry about it, because State Farm would be handling the matter and taking care of everything. (Wilkins Depo., p. 18, 66, 70-71, 83-84, 85, 87, 110-113, 117, 118, 122-123). Accordingly, once Wilkins started receiving court papers in the mail, she did not take any action because she believed State Farm was already getting copies, was handling the matter, and had obtained an attorney for her. (Wilkins Depo., pp. 90, 116-117, 128). While Mr. Martinez admits he received a telephone call from Wilkins on December 30, 2009, he claims she did not mention the fact that she had been served. Instead he updated Wilkins on the file status and updated her contact information so that it correctly reflected her address and phone number. (Spierto Depo., p. 92)(Martinez Depo., p. 107). Specifically, he changed Wilkins' address from 830 East Main Street in Lakeland (which was her parents' business address) to 3540 West Campbell Road in Lakeland (Martinez Depo., pp. 113-114)(Wilkins Depo., p. 118)(Spierto Depo., p. 95). State Farm's previous letters to Wilkins had been directed to the incorrect East Main Street address. (Martinez Depo., p. 114).

communications with anyone (i.e., Wilkins, Simon's attorneys, the clerk of court) to determine whether there had been actual service of the complaint by the January 22, 2010 deadline. (Spierto Depo., p. 121).[7]

28.    On March 9, 2010, without ever checking the court file or retaining counsel for Wilkins, Adrian Martinez closed the file due to no activity. (Martinez Depo., pp. 9-10, 139)  His file notes state: "Appears insured was not served." (Spierto Depo., p. 118) (Martinez Depo., pp. 10, 139).

29.    About one month *before* State Farm closed its file, on or about February 2, 2010, Simon filed a Motion for Default Judgment. (Spierto Depo., p. 124)(Wilkins Depo., p. 89)(Hayes Depo., p. 64, Exhibit 11).

30.    The Clerk's default was entered against Wilkins on February 4, 2010. (Wilkins Depo., p. 90)(Hayes Depo., p. 82, Exhibit 12).

31.    On October 4, 2010, the lawsuit went to trial and resulted in a final judgment in favor of Simon and against Wilkins in the amount of $2,082,890.06.  (Second Am. Complaint, ¶8, Exhibit 2).

32.    Wilkins assigned all of her rights against State Farm relating to the underlying lawsuit and the final judgment to Simon. (Second Am. Complaint, ¶8)(Am. Complaint, Exhibit 3).

33.    On October 3, 2014, Simon filed the instant action against State Farm. This Motion for Summary Judgment is directed towards Count I, a claim for declaratory judgment, and Count II, a breach of contract claim.

---

[7] Martinez claims he made three phone calls and left two voice mail messages for Wilkins in February 2010. (Martinez Depo., pp. 137, 141-143).  He does not recall whether he mentioned service in his messages. (Martinez Depo. p. 137). Wilkins does not recall ever receiving these messages. (Wilkins Depo., p. 101).

## III. STANDARD OF ADJUDICATION

Rule 56 of the Federal Rules of Civil Procedure provides summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The interpretation of an insurance policy "is a matter of law for the Court to determine and is therefore amenable to summary judgment." <u>Mid-Continent Casualty Company v. Basdeo</u>, 742 F. Supp. 2d 1293, 1321 (S.D. Fla. 2010).

## IV. MEMORANDUM OF LEGAL AUTHORITY

### *KAREN SIMON'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.*

**A.   State Farm Policy Does Not Require Service Of The Complaint On The Insured In Order To Trigger Duty To Defend.**

On the date of the accident, Wilkins was insured by an automobile insurance policy issued by State Farm (Policy #861 2261-E04-59J)(the "Policy"). The Policy provides as follows with respect to State Farm's duty to provide a defense to its insureds:

> LIABILITY - COVERAGE A. . . .
>
> <u>We will</u>:
>
> 1.   pay damages which an *insured* becomes legally liable to pay because of:
>
>> a.   *bodily injury* to others; and,
>>
>> b.   damage to or destruction of property including loss of use,
>
> caused by accident resulting from the ownership, maintenance, or use of *your car*; and,
>
> 2.   <u>defend any **suit** against an *insured* for such damages with attorneys hired and paid by us.</u> . . .

(underlined and bolded emphasis added).

The Policy does not define the word "suit," nor does the Policy refer to any requirement of *service* in order to trigger a duty. Instead, the Policy merely provides that State Farm will defend "any suit against an insured" seeking damages for bodily injury caused by an automobile accident.

## B. Undefined Terms In Policy Should Be Interpreted Broadly In Insured's Favor.

Because State Farm chooses its policy language, the language is to be construed against State Farm. See Quick v. National Indemnity, 231 So. 2d 22, 25 (Fla. 4th DCA 1970). When an insurer fails to define a term in a policy, the undefined term will be liberally construed in favor of the insured and in a manner which provides the broadest coverage. See State Farm v. CTC Development, 720 So. 2d 1072, 1076 (Fla. 1998); Barcelona Hotel v. Nova Casualty Co., 57 So. 3d 228, 232 (Fla. 3d DCA 2011); Abreu v. Lloyd's, 877 So.2d 834, 836 (Fla. 3d DCA 204); State Comprehensive Health Association v. Carmichael, 706 So. 2d 319, 320-321 (Fla. 4th DCA 1997); Westmoreland v. Lumbermen's Mutual, 704 So.2d 176, 180 (Fla. 4th DCA 1977); National Merchandise v. United Service Ass'n, 400 So. 2d 526, 530 (Fla. 1st DCA 1981). If the insurer intends to limit coverage then, rather than using an unclear or ambiguous term or word, the insurer should clarify and use a more precise term. Failure to do so is interpreted against the insurer. Harrington v. Citizens Property Ins., 54 So.3d 999, 1004 (Fla. 4th DCA 2010).

If there are multiple interpretations or definitions of a word or phrase in a policy, the one most favorable to the insured should be utilized by the court. A dictionary, legal, or statutory interpretation of a term, which is favorable to the insurer, should not be used in

construing an insurance policy if there is an alternative, reasonable definition or interpretation of the term more favorable to the insured. See, e.g., Travelers v. PCR, 889 So. 2d 779 (Fla. 2004)(stating tort or workers compensation principles should not be utilized in determining what constitutes an "accident" under policy); State Farm v. CTC, 720 So. 2d 1072 (Fla. 1998)(refusing to utilize tort law concepts on what constitutes an "accident" in interpreting the meaning of the term in policy); Prudential v. Swindal, 622 So. 2d 467 (Fla. 1993)(refusing to utilize tort principles on what constitutes an "intentional" injury in a policy exclusion where there is an alternative legal definition more favorable to the insured). See additionally, Continental Ins. Co. v. Roberts, 410 F.3d 1331 (11th Cir. (Fla.) 2005); Westport v. VN Hotel Group, 761 F. Supp. 2d 1337 (M.D. Fla. 2010); State Farm v. Pridgen, 498 So.2d 1245 (Fla. 1986); Fireman's Fund v. Boyd, 45 So.2d 499 (Fla. 1950); Barcelona Hotel v. Nova Casualty, 57 So. 3d 228 (Fla. 3d DCA 2011); Abreu v. Lloyd's, 877 So. 2d 834 (Fla. 3d DCA 2004); State Comprehensive Health v. Carmichael, 706 So. 2d 319 (Fla. 4th DCA 1997); Budget v. Gov't Employees Ins. Co., 698 So. 2d 608 (Fla. 4th DCA 1997); National Merchandise v. United Service Automobile Ass'n, 400 So. 2d 526 (Fla. 1st DCA 1981).

## C.  Black's Law Dictionary Definition of "Suit" - Service Not Required

Keeping in mind that undefined terms are to be construed in favor of the insured and coverage, it is still helpful to consider documentary sources where the term "suit" has been defined. Black's Law Dictionary defines the term "suit" as follows:

> Any proceeding by a party or parties against another in a court of law . . . 'All these nouns [suit, lawsuit, action, case, and cause] denote proceedings instituted for the purpose of enforcing a right or otherwise seeking justice. . . *Suit* stresses the sense of campaign - . . . now a complainant's attempt to redress a wrong, enforce a right, or compel application of a

> rule. . . . In the legal sense, *suit* refers to an ongoing dispute at any stage, *from the initial filing* to the ultimate resolution.

Black's Law Dictionary (10th Ed. 2014) (underlined and bolded emphasis added). Similar to the State Farm Policy, Black's Law Dictionary contains no requirement of *service* in order for something to qualify as a "suit." To the contrary, a "suit" is a dispute which exists from the "initial filing" of the proceeding. Id.

### D. Rules of Civil Procedure - Civil Action Commenced When Complaint Filed

The Federal Rules of Civil Procedure and the Florida Rules of Civil Procedure also support the idea that a "suit" becomes such upon filing, irrespective of whether service has occurred. In other words, *service* is not required in order for there to be a "suit:"

> A civil action is commenced by *filing* a complaint with the court.

FED. R. CIV. P. 3 (emphasis added).

> Every action of a civil nature shall be deemed commenced when the complaint or petition is *filed* . . .

Fla. R. Civ. P. 1.050 (emphasis added).

### E. Case Law Indicates State Farm's Duty To Defend Wilkins Was Triggered Upon Its Notice Of The Lawsuit Before Service Of Process Was Effected

State Farm's contention it had no duty to defend Wilkins *from a known lawsuit* prior to service is also unsupported by case law. Courts evaluating an insurer's duty to defend under Florida law do not reference any service requirement in order to trigger the insurer's defense obligation. Instead, these courts consistently emphasize and focus *solely* on the role of the filed *complaint* and whether it alleges conduct covered by the policy. Service of the complaint on the insured is simply not a factor which is discussed by Florida courts in

12

evaluating the insurer's duty to *defend*.

For example, in Jones v. Florida Insurance Guaranty Association, 908 So. 2d 435 (Fla. 2005), the Florida Supreme Court succinctly outlined the general parameters of an insurer's duty to defend as follows:

> It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint.
>
> The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. Indeed, when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend. Any doubts regarding the duty to defend must be resolved in favor of the insured.

Id. at 442-443 (internal citations and quotation marks omitted). See also Mid-Continent Casualty Company v. Basdeo, 742 F. Supp. 2d 1293, 1323-1324 (S.D. Fla. 2010).

In other words, "the central inquiry in a duty to defend case is whether the complaint 'alleges facts that fairly and potentially bring the suit within policy coverage.'" Hartford Accident and Indemnity Company v. Beaver, 466 F.3d 1289 (11th Cir. (Fla.) 2006)(quoting Jones, 908 So. 2d at 443). See also Voeller Construction, Inc. v. Southern-Owners Insurance Company, 2015 WL 1169420, *2 (M.D. Fla. March 13, 2015)("If the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered").[8] Nowhere

---

[8] See generally, Aetna Casualty & Surety Co. v. The Protective National Insurance Company of Omaha, 631 So. 2d 305, 307 (Fla. 3d DCA 1993)(outlining the division of duties between the insurer and attorney retained by insurer and noting one of the insurer's duties is "*on the filing of suit against its assured to employ competent counsel to represent the assured* and to provide counsel with adequate funds to conduct the defense of the suit")(quoting Merritt v. Reserve Ins. Co., 110 Cal. Rptr. 511, 527 (Cal. App. 1973)).

is service of the complaint deemed a prerequisite to the triggering of the insurer's duty.

Courts interpreting Florida law emphasize the insurer's *knowledge* of claims against their insureds when addressing the duty to defend (irrespective of how the insurer obtains that knowledge). See Scottsdale Insurance Company v. Shageer, 2010 WL 4961166 (S.D. Fla. Dec. 1, 2010)(noting with approval precedent from other jurisdictions supporting the position that "if an insurer receives actual notice of a lawsuit against its insured, even if from another insured, *its duty to defend is triggered at the time that it receives actual notice of the lawsuit*")(quoting 14 Couch on Insurance §200.3.1 (Westlaw 2010)(citing Federated Mutual Ins. Co. v. State Farm Mutual Ins. Co., 668 N.E.2d 627 (Ill. App. 1996)).

Although lack of service was not the issue in Jones v. Florida Insurance Guaranty Association, Inc., the Court's emphasis on what the insurer actually knew about the complaint against its insured in evaluating its duty to defend provides helpful insight. In that case, the plaintiff filed a wrongful death action against Pratt. The plaintiff provided a copy of the complaint to FIGA, Pratt's insurer. FIGA denied coverage, and a default judgment was entered against Pratt. Pratt then assigned his rights against FIGA to the plaintiff. Thereafter, the plaintiff filed a lawsuit against FIGA, alleging it violated its duty to defend Pratt in the underlying action. The trial court ruled that, based on the facts alleged in the underlying complaint, which fairly and potentially brought the action within policy coverage, the wrongful death complaint triggered FIGA's duty to defend. Upon review, the Florida Supreme Court agreed with the trial court. The Court discussed FIGA's contention the wrongful death action did not constitute a covered claim, because Pratt violated the terms of the policy by failing to report the accident, by failing to notify FIGA an action had been filed

14

against him, and by failing to cooperate with the investigation. The Court found those arguments to be without merit, because the plaintiff's counsel had provided a courtesy copy of the lawsuit to FIGA several weeks after the plaintiff amended the complaint to include Pratt. Moreover, FIGA's adjuster confirmed the following: FIGA received a copy of the amended complaint naming Pratt prior to denying Pratt's claim; FIGA had notice of the claim; and, FIGA had an opportunity to investigate and defend the lawsuit. The Court noted that, *even if Pratt had failed to cooperate*, FIGA could not demonstrate prejudice, because the insurer had all of the information necessary and, nevertheless, unilaterally decided not to defend. Id. at 453.

In <u>Mid-Continent Casualty Co. v. Basdeo</u>, 742 F .Supp. 2d 1293 (S.D. Fla. 2010), the district court relied on the Florida Supreme Court's decision in <u>Jones</u> in order to reach its conclusion an insurer's duty to defend may be triggered by the party making a claim against the insured:

> While the Florida Supreme Court has not directly ruled on this issue, *dicta* from another Florida Supreme Court decision, <u>FIGA</u>, 908 So. 2d at 442-43, guides this Court's finding that under Florida law, where an insured in a case such as this one does not request a defense from its insurer, <u>a duty to defend, nonetheless, can be triggered by a party claiming damages who is intended to be protected against by the insurance policy</u>. . . .

> \* \* \*

> The Court finds <u>FIGA</u> instructive, as the <u>FIGA</u> opinion as a whole necessarily presupposes that the insurer's duty to defend was triggered, despite Pratt's apparent failure to request a defense. . . .

> \* \* \*

. . .[I]n <u>FIGA</u>, the Florida Supreme Court concluded that FIGA

owed a duty to defend and indemnify Pratt, even though Pratt had failed to report the accident, failed to notify FIGA that an action had been filed against him, and failed to cooperate in the investigation, and FIGA had received its only notification of the lawsuit from Jones's counsel. Obviously, since Pratt was not cooperating FIGA could not discuss Pratt's desired legal strategy with Pratt. Nor could FIGA obtain Pratt's informed consent in defending the claim. And, in order to defend Pratt in these circumstances where Pratt was not cooperating, FIGA would have had to pay a lawyer without Pratt's informed consent. Nevertheless, the Florida Supreme Court, which is certainly aware of the rules governing the Florida Bar, had no problem finding FIGA still had to defend and indemnify.

Moreover, under Mid-Continent's proposed view, whenever an insured refused to respond to an insurer's inquiries - even if no substantial prejudice to the insurer resulted from noncooperation, an insurer would automatically be relieved of its obligation to defend and indemnify because under such circumstances, an insurer would be unable to ascertain the insured's desired legal strategy or the insured's informed consent regarding the insurer's payment of the lawyer. That, however, is not the law. . . .

Id. at 1326-1328 (emphasis added).

Although addressing a different situation, the rationale utilized by the Eleventh Circuit Court of Appeals in Hartford Accident and Indemnity Company v. Beaver, 466 F.3d 1289 (11th Cir. (Fla.) 2006) also supports the position that a duty to defend is triggered under Florida law when a complaint alleging facts potentially covered by the policy is *filed* against an insured, even if prior to service. That case involved a class action which had been filed, but where the class had not been certified and where the only potentially covered claims were by putative class members. The district court held the insurer had no duty to defend until the class was certified, because without certification, there was no class action to defend against. On appeal, however, this decision was reversed. The Eleventh Circuit held the insurer had a

duty to defend, because the complaint alleged sufficient facts which potentially brought the suit within the ambit of the policy's coverage. The Eleventh Circuit emphasized the fact that "the policy unambiguously says that the right and duty to defend are triggered by the same event - - commencement of a suit alleging covered damages." Id. at 1295 (emphasis added). The Eleventh Circuit rejected the insurer's argument that a duty to defend would be impractical since the class might never be certified:

> Again, Hartford fails to cite any supporting authority and ignores clear Florida case law holding that a duty to defend arises despite uncertainty as to the merits or factual accuracy of a claim. . . If the duty to defend arises in spite of the uncertainty and impracticality of defending wholly meritless individual claims, we think it equally clear that the duty to defend is not defeated by some uncertainty as to the merits of a class certification. The Florida courts have repeatedly explained that the duty to defend arises when a complaint fairly and *potentially* asserts a covered claim. . . .

Id. (underlined emphasis added).

Numerous courts outside Florida have held an insurer's duty to defend is triggered by its actual notice of a lawsuit filed against the insured irrespective of service. For example, in Biegler v. American Family Mutual Insurance Company, 621 N.W.2d 592 (S.D. 2001), the insurer argued that, even if its liability policy otherwise provided coverage, its duty to defend the insured was never triggered, because the insured failed to provide it with proof of service of the summons and complaint. According to the insurer, "without actual service of process or acceptance of the same by [the insured], there was never a suit to defend." Id. at 600. The district court *rejected* this reasoning:

> The term suit is defined in the definitions portion of the policy as 'a civil proceeding in which damages because of bodily injury, property damage, personal injury or advertising injury

> to which this insurance applies are alleged.' This definition does not tell us what [the insured's] obligations are concerning the tender of claims brought against him for false imprisonment and negligent supervision. <u>It certainly does not tell us that [the insured] had the obligation to accept service of process and provide proof of the same prior to [the insurer] being obligated to defend.</u>

Id. at 600 (emphasis added).

In <u>Illinois Founders Insurance Company v. Barnett</u>, 710 N.E.2d 28 (Ill. App. 1999), a liability insurer asserted it was relieved of its duty to defend its insured, because (1) it did not receive notice that a lawsuit had been filed against its insured until after a default judgment was entered; and/or (2) earlier notice sent to the insurer's representatives (<u>i.e.</u>, a broker and an investigator) was delivered before the insured had been formally served with the summons and complaint. The appellate court rejected these arguments. First, the appellate court addressed the issue of when the duty to defend is triggered:

> An insurer has an obligation to defend under an insurance contract if <u>it has actual notice of a lawsuit</u>. . . . <u>Actual notice means notice from 'any source sufficient to permit the insurer to locate and defend its insured.'</u> . . . Likewise, compliance with a 'prompt notice' clause within a policy of liability insurance is satisfied when the insurer is provided notice from an injured person or his or her counsel. . . . <u>Therefore, an insurer may be liable under an insurance contract even if the insured never tenders a defense of the lawsuit. Moreover, actual notice can arise from a letter or phone call to the insurer from an injured party or an attorney asserting a claim under the insurance policy.</u> . . .
>
>          * * *
>
> . . .[A]n insurer's actual notice of a lawsuit triggers its duty to defend. . . . [A]ctual notice [is] 'notice sufficient to permit the insurer to locate and defend the lawsuit.' . . .
>
>          * * *

> . . . Our supreme court has held that the only inquiry in determining an insurer's duty to defend is whether the insurer received actual notice of the lawsuit. . . . Therefore, the actual notice standard only requires the court to determine whether the notice the insurer received sufficiently enabled it to locate and defend the lawsuit. . . .

Id. at 32-33 (emphasis added). Second, the appellate court rejected the insurer's suggestion that actual service of a filed complaint is necessary in order to trigger the duty to defend:

> *We reject [the insurer's] attempt to impose an additional element for compliance with the actual notice standard by requiring that an insurer also receive notice of service of summons on the insured in order to trigger the duty to defend.*

Id. at 34 (emphasis added). In the end, the appellate court held the facts in the case supported the conclusion the insurer had sufficient information to locate and defend the lawsuit, which satisfied the actual notice standard and triggered the plaintiff's duty to defend:

> [The insurer] received notice of Barnett's claim within eight days of the occurrence. [The insurer] was in contact with its insured immediately after the accident. [The insurer] sent claim forms to the insured, hired investigators and began to prepare to defend the claim eight days after Barnett was attacked. Barnett and [the insurer] had been in communication with each other since immediately after the occurrence. Barnett's attorney also contacted [the insurer]. Three weeks after the attack, Barnett specifically talked with [the insurer] on the telephone, and [the insurer] informed Barnett about its investigation of the claim. In addition, both Barnett and Barnett's attorney spoke with [the insurer's] investigator in charge of investigating the claim. [The insurer's] investigators and [the insurer's] insurance broker received a copy of the filed complaint from Barnett's lawyer within two weeks of the filing date. Therefore, [the insurer] was provided with sufficient information to locate and defend the lawsuit and the actual notice requirement has been satisfied even though counsel for Barnett failed to forward service of summons to the insurer.

Id. at 35 (emphasis added).

Other courts have similarly held an insurer's actual notice that a lawsuit has been filed against its insured triggers the duty to defend. See DeStefano v. Cochran, 491 F. Supp. 2d 796, 804 (N.D. Ind. 2007); Garcia v. Underwriters at Lloyd's London, 182 P.3d 113, 114 (N.M. 2008); Baker Donelson Bearman & Caldwell, P.C. v. Muirhead, 920 So. 2d 440, 451 (Miss. 2006); Dearborn Ins. Co. v. International Surplus Lines Ins. Co., 719 N.E.2d 1092, 1096 (Ill. App. 1999); Federated Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co., 668 N.E.2d 627, 632-633 (Ill. App. 1996).[9]

There are also many cases outside of Florida which, *without considering service*, find a duty to defend is triggered by the filing or commencement of a claim or lawsuit. See, Simon v. Maryland Casualty Company, 353 F.2d 608, 612 (5th Cir. 1965); Pizza Magic International, LLC v. Assurance Company of America, 447 F. Supp. 2d 766, 779 (W.D. Ky. 2006); Aetna Casualty & Surety Co. v. Dow Chemical Co., 44 F. Supp. 2d 847, 854 (E.D. Mich. 1997); Black v. Allstate Insurance Company, 100 P.3d 1163, 1170 (Utah 2004); Kirk v. Mt. Airy Insurance Company, 951 P.2d 1124, 1126 (Wash. 1998). Service of the complaint is simply not a factor considered by these courts in evaluating whether a duty to defend exists.

Using the rationale of these cases, Simon respectfully submits that State Farm clearly had a duty to defend Wilkins, at the very latest, when it discovered on September 23, 2009 that Simon had filed a lawsuit against Wilkins.

---

[9] This decision was cited with approval by the United District Court for the Southern District of Florida in Scottsdale Insurance Company v. Shageer, 2010 WL 4961166, *8 (S.D. Fla. Dec. 1, 2010).

**F.      At The Very Least, The Term "Suit," As Used In The State Farm Policy, Is Ambiguous And Should Be Interpreted Liberally In Favor Of Insured**

At the very least, the undefined term "suit," as used in the State Farm Policy, is ambiguous.[10] See generally, Anderson Brothers, Inc. v. St. Paul Fire and Marine Insurance Company, 729 F.3d 923, 932 (9th Cir. 2013)(term "suit" is ambiguous in context of insurance provision describing when duty to defend is triggered); Gull Industries, Inc. v. State Farm Fire and Casualty Company, 326 P.3d 782, 784 (Wash. App. 2014)(concluding term "suit" is ambiguous in this context); Hartford Accident & Indemnity Co. v. Dana Corporation, 690 N.E.2d 285 (Ind. App. 1998)(holding term "suit" in context of determining duty to defend was ambiguous).

Where the language in an insurance policy is subject to differing interpretations, it should be construed liberally in favor of the insured and strictly against the insurer. Continental Ins. Co. v. Roberts, 410 F.3d 1331, 1333 (11th Cir. (Fla.) 2005); Westport Ins. v. VN Hotel, 761 F. Supp. 2d 1337, 1345-1346 (M.D. Fla. 2010); Flores v. Allstate Insurance Company, 819 So. 2d 740, 744 (Fla. 2002); Bethel v. Security National Ins. Co., 949 So. 2d 219, 222-223 (Fla. 3d DCA 2006). Ambiguities in an insurance policy must be construed in favor of providing maximum coverage to the insured. Kopelowitz v. Home Insurance Company, 977 F. Supp. 1179, 1185 (S.D. Fla. 1997). See also Auto-Owners Insurance Company v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)("If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other

---

[10] Simon respectfully submits it is not even clear the term "suit" requires an actual lawsuit to be filed. See e.g., Land O'Lakes, Inc. v. Employers Mutual Liability Ins. Co. of Wisconsin, 846 F. Supp. 2d 1007 (D. Minn. 2012); National Union Fire Insurance Co. of Pittsburgh, Pa. v. Porter Hayden Company, 408 B.R. 66, 75 (D. Md. 2009); Zecco, Inc. v. Travelers, 938 F. Supp. 65, 67 (D. Mass. 1996); Hazen Paper Co. v. United States Fidelity & Guaranty Co., 555 N.E.2d 576 (Mass. 1990).

21

limiting coverage, the insurance policy is considered ambiguous . . . . Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy . . . Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured); State Farm Fire and Casualty Company v. CTC Development Corporation, 720 So. 2d 1072, 1076 (Fla. 1998)("[W]here policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer"); Allstate Insurance Company v. Swain, 921 So. 2d 717, 719 (Fla. 3d DCA 2006)("If, after construing the policy, the court finds that more than one interpretation is possible, it must resolve the ambiguity against the insurer who drafted the language of the insurance contract").

### G.    Where Insurer Breached Its Own Contractual Duty To Defend, Insurer Cannot Claim Lack Of Cooperation By Insured Allows It To Deny Coverage.

Because State Farm breached its duty to defend Wilkins and, thus, did not comply in good faith with the terms of its Policy, State Farm cannot rely on any alleged lack of cooperation by Wilkins in an attempt to preclude coverage. Under Florida law, where an insurer improperly refuses to defend its insured, the insurer cannot thereafter rely upon the insured's subsequent breach of the policy in order to defeat a claim for coverage. Gallagher v. Dupont, 918 So. 2d 342, 347 (Fla. 5th DCA 2005). See also Philadelphia Indemnity Ins. Co. v. Kohne, 181 Fed. Appx. 888 (11th Cir. (Fla.) 2006)("When an insurer unequivocally denies coverage, Florida law provides that the insurer cannot later also fall back on breach of the cooperation clause to deny coverage").[11]

---

[11] See additionally, Paz v. Allstate Ins. Co., 478 So.2d 849, 849 (Fla. 3d DCA 1985)("Having breached the contract [by denying coverage, the insurer] cannot attempt to avoid liability by relying on a provision prohibiting the insured from settling with the tortfeasor without its consent"); Infante v. Preferred Risk Mutual

In order to deny coverage based on an insured's lack of cooperation, the insurer must show it has "exercised diligence and good faith in seeking to bring about the cooperation of its insured" and must also show that "it has complied in good faith with the terms of the policy." See Mid-Continent Casualty Co. v. Basdeo, 742 F. Supp. 2d 1293, 1338 (S.D. Fla. 2010); Bontempo v. State Farm Mutual Automobile Ins. Co., 604 So. 2d 28, 29 (Fla. 4th DCA 1992); American Fire & Casualty Co. v. Collura, 163 So. 2d 784, 788 (Fla. 2d DCA 1964).

Given the foregoing, an insurance company "acts at its peril in refusing to defend its insured and will be held responsible for the consequences." Gallagher, 918 So. 2d at 347. See generally, Western Heritage Insurance Company v. Montana, 30 F. Supp. 3d 1366, 1372 (M.D. Fla. 2014)("[I]f an insurer wrongfully refuses to defend, the insurer breaches its duty to defend and forfeits its right to control the defense. This 'relieves the insured of his contract obligation to leave the management of such suit to the insurer and justifies him in assuming the defense of the action on his own account'"); Nationwide Mutual Fire Ins. Co. v. Beville, 825 So.2d 999 (Fla. 4th DCA 2002)("the failure of the carrier to offer a proper defense upon receipt of notice waives any defect in delaying notice").

**H.** **Because State Farm Breached Its Duty To Defend Wilkins, Simon, as Wilkins' Assignee, Is Entitled To Recover All Damages Naturally Flowing From The Breach.**

Because it is undisputed State Farm had actual notice of Simon's lawsuit against Wilkins, and because it is undisputed that, regardless this knowledge, State Farm failed to retain legal counsel to defend Wilkins, State Farm breached its duty to defend as a matter of

Ins. Co., 364 So. 2d 874, 875 (Fla. 3d DCA 1978)(where insurer breaches the insurance contract by wrongfully denying coverage, the insurer "cannot be allowed to rely upon a contractual provision prohibiting the insured from settlement of the claim with a responsible party in order to relieve itself from liability").

law. Where an insurer breaches its duty to defend, "its conduct constitutes a breach of contract, entitling the insured to recover all damages naturally flowing from the breach." Travelers Indemnity Company of Illinois v. Royal Oak Enterprises, Inc., 429 F. Supp. 2d 1265, 1273 (M.D .Fla. 2004). See also Category 5 Management Group, LLC v. Companion Property and Casualty Insurance Company, 76 So. 3d 20, 23 (Fla. 1st DCA 2011); Gallagher v. Dupont, 918 So. 2d 342 (Fla. 5th DCA 2005)("Where a liability insurance carrier has notice of a proceeding against its insured and is afforded the opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, is conclusive against the indemnitor or insurer as to all material matters determined therein"); Bellsouth Telecommunications, Inc. v. Church & Tower of Florida, Inc., 930 So. 2d 668, 670-671 (Fla. 3d DCA 2006)("It is well-settled law that, when an insurer . . . refuses to defend, the insurer transfers to the insured the power to conduct its own defense, and if it later determined that the insured was entitled to coverage, the insured will be entitled to full reimbursement of the insured's litigation costs").

## V.   CONCLUSION

This case presents a classic example of why an insurer's duty to defend should be triggered as soon as the insurer discovers a complaint has been filed against its insured, regardless of whether the insured has been formally served. Through its various missteps, State Farm "dropped the ball" and failed to ascertain whether service on Wilkins had been obtained. State Farm mistakenly assumed there was no service, closed its file, and abandoned its insured. If State Farm had simply retained an attorney to defend Wilkins, the attorney would have checked the court file, called plaintiff's counsel, ascertained the status of service

on Wilkins, responded to the lawsuit, and avoided a default judgment.

Simon submits State Farm wrongfully failed to defend and afford coverage for its insured, Lori Wilkins. Accordingly, Simon, as Wilkins' assignee, respectfully moves this Court to enter summary judgment in her favor on liability and to find, specifically, as follows: (1) State Farm's duty to defend Wilkins was triggered no later than September 23, 2009, the date on which State Farm was notified Simon had filed a personal injury lawsuit against Wilkins; (2) State Farm breached its duty to defend Wilkins when it failed to retain legal counsel to represent Wilkins after discovering the existence of Simon's lawsuit; and, (3) Because State Farm breached its duty to defend, it cannot, as a matter of law, rely on any alleged lack of cooperation by Wilkins in an attempt to avoid its coverage obligations. Based on the foregoing, summary judgment on the issue of liability should be entered in favor of Plaintiff Karen Simon.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Carol M. Bishop, Esq. (cmb@taylordaylaw.com) and Gina P. Grimsley, Esq. (gpg@taylordaylaw.com), Taylor, Day, Grimm & Boyd, 50 North Laura Street, Suite 3500, Jacksonville, FL 32202. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail **or** email to the following non-CM/ECF participants: Steven W. Igou, Esq. (woodyigoulaw@gmail.com), Law Offices of Steven W. Igou, 271 N. Pennsylvania Avenue, Suite C, Winter Park, FL 32789.

s/ Chris Ballentine
CHRIS BALLENTINE
Florida Bar No. 434205
Fisher Rushmer, P.A.
390 N. Orange Avenue, Ste. 2200
Post Office Box 3753
Orlando, FL 32801-1642
(407) 843-2111
(407) 422-1080 (fax)
cballentine@fisherlawfirm.com
dburns@fisherlawfirm.com
Attorneys for Plaintiff

and

s/ Joseph C. Brock
JOSEPH C. BROCK
Florida Bar No. 356220
Law Offices of Steven "Woody" Igou
271 N. Pennsylvania Ave., Suite C
Winter Park, FL 32789
Telephone: (407) 622-1392
Fax: (407) 622-0451
jbrocklaw@gmail.com
woodyigoulaw@gmail.com
Co-counsel for Plaintiff

L:\CMB\Simon\PLEADING - FED COURT\msj.sbp.docx