IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAREN SIMON,

     Plaintiff,

vs.                            CASE NO.:  6:14-cv-2125-Orl-37GJK

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.

_____/

## DEFENDANT'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Fed. R. Civ. P. 56 and M.D. Fla. Local Rule 3.01, hereby files its Response and Memorandum of Law in Opposition to Plaintiff's Motion for Final Summary Judgment (Doc. 60). Disputed issues of material fact exist for the jury and Plaintiff is not entitled to summary judgment as a matter of law.

### Factual Background

The January 3, 2006, vehicular accident between Karen I. Simon ("Simon") and Lori Wilkins ("Wilkins") was minor with negligible property damage.[1] (Doc. 22, ¶ 4). That day, Simon contacted Wilkins' insurer, State Farm, and the next day, a State Farm claim representative called Wilkins on her cell, home, and work phone numbers, leaving messages with a co-worker and on the cell phone. (Martinez Depo, Doc. 62-1 & 62-2 (hereinafter referred to as Doc. 62), at Ex. 4: pp. 30-31). He contacted Wilkins' State Farm agent, who confirmed he had the correct numbers for Wilkins and reported speaking with Wilkins the prior day. (Doc. 62, at Ex. 4: p. 30). On January

---

[1]  Wilkins' right side view mirror side-swiped Simon's left side view mirror causing Simon's mirror to pop out. Wilkins felt no impact, had no damage to her car and was unaware her car had come into contact with Simon's. Simon followed after Wilkins until she stopped and told Wilkins of her mirror's damage. The police were not contacted and no report of the incident was generated.  (Wilkins Depo., Doc. 63-1, pp. 42:25-47:25; Doc. 62, Ex. 4: p. 30-31).

4, 2006, State Farm sent Wilkins a contact letter at the address listed in State Farm's claim file, 830 E. Main Street, Lakeland, Florida 33801 (Doc. 62, at Ex. 4: p. 30; Doc. 63-1 at Ex. 3)[2], and spoke to Wilkins later that day.

During the next month, State Farm had contact with Simon about her car's damage and paid her the $350 cost to repair her car. (Doc. 62 at Ex. 4: pp. 26-29). By February, 2006, Simon, having hired Ramon Melendez, Esquire, made an injury claim. State Farm disclosed insurance information to him and began investigating the claim, contacting Wilkins to photograph her car. (Doc. 62, at Ex. 4: pp. 25-26). Six weeks after the car-mirror incident, Simon fell in an Orlando nail salon, landing on her left shoulder and injuring her neck. (Simon Depo., Doc. 64-1, p. 37:9-25). State Farm discussed settlement with Mr. Melendez and sent Wilkins copies of offers and responses. (Doc. 62, p. 26:15-18 & Ex. 4: pp. 12-29 & Ex. 14).

On December 20, 2006, State Farm learned Simon had new counsel, Charles Smith, Esquire. (Doc. 62, at Ex. 16 & Ex. 4: p.15). On January 9, February 12, February 20, and February 21, State Farm claim representative Adrian Martinez followed up with Mr. Smith and discussed Simon's claim. (Doc. 62, at Ex. 4: pp. 12-13). On March 23, March 29, and May 3, Martinez attempted contact with Mr. Smith, leaving call back messages which were not returned. (Doc. 62, p. 29:2-17 & Ex. 4: pp. 9-12). Meanwhile, on March 23 and March 29, Martinez called Wilkins' cell, work and home phones, but was unable to reach her or leave messages. (Doc. 62, pp. 29:8-30:8 & Ex. 4: p. 12). On March 23, he wrote Wilkins, providing a status update and alerting her that he had tried but could not contact her by phone, and on March 29, he called 411 for another

---

[2] Jereco Hardware, which is owned and run by Wilkins' father, Jere Holbrook, is at 830 E. Main Street. (J. Holbrook Depo, "Doc. 66-1" pp. 4:24-5:4). Wilkins worked there sporadically over time, and since 2000 or 2001 has done the store's monthly accounts receivable. (Doc. 66-1, pp. 5:24-6:7; Doc. 63-1, p. 51:16-23). If Mr. Holbrook received mail at the store addressed to Wilkins, he would give it to her, and since he lives next door to Wilkins, giving her mail received at the store was not problematic. (Doc. 66-1, pp. 9:10-10:2).

listing for Wilkins, but 411 gave him Wilkins' home number which he already had. (Doc. 62. at Ex. 4: p. 12; Doc. 63-1, at Ex. 9). On May 3, 2007, Martinez wrote Mr. Smith about settling. (Doc. 62, pp. 30:19- 31:18 & Ex. 19). He phoned Mr. Smith's office on May 23, 2007, August 3, 2007, November 12, 2007, and February 13, 2008, but Mr. Smith was not able to take his calls, so Martinez left messages asking to be contacted. (Doc. 62, at Ex. 4: pp. 9-11). On March 11, 2008, Martinez received a letter from Mr. Smith, stating he no longer represented Simon, and Martinez thereafter wrote Simon that day about the statute of limitations. (Doc. 62, at Ex. 4: p. 9).

On March 13, 2008, State Farm received a letter dated March 5 from Simon's new attorney, Todd Miner of Morgan & Morgan, requesting policy information and stating all further communications about Simon should be with case manager Cindy Lambert. (Doc. 62, p. 32:1-7 & Ex. 20 & Ex. 4: p. 9). After responding to Miner's disclosure letter, giving the policy to him and stating there were no known coverage defenses (Doc. 62, pp. 33:10-34:8 & Ex. 21), Martinez followed up with Miner' office on June 19, 2008 (leaving Cindy a message), and again on September 24, 2008, getting a message the number was disconnected. (Doc. 62, pp. 38:16-41:22 & Ex. 4: p. 8). Martinez closed the file, noting the reasons therefor, and called Wilkins, leaving a voicemail updating her. (Doc. 62, pp. 43:2-44:4 & Ex. 4: p. 8).

Unbeknownst to Martinez, Ryan Hayes, Esquire, with Morgan & Morgan, assumed representation of Simon in the summer of 2008. (Doc. 65-1, p. 42:6-13). Neither he nor Mr. Miner alerted State Farm to this change. On August 20, 2008, Attorney Hayes filed suit against Wilkins in Polk County Circuit Court. (Doc. 22 ¶ 5; Doc. 61).[3] The day prior, he filed suit in Orange County against the owner of the nail salon where Simon fell and injured her neck, which Simon later settled

---

[3] State Farm separately filed Certified Copies of the pleadings and records in Case No. 2008-CA-007721 it refers to herein, and requested the Court take judicial notice of such records. (Doc. 61).

in July 2010 for $450,000.00. (Doc. 64-1, p. 42:12-20; Doc. 65-1, pp. 50:17-51:12). Plaintiff's efforts to serve Wilkins with Simon's initial summons were abandoned after September 2008. (See Doc. 65-1, pp. 57:15-59:20 & Ex. 9). A year later, in September 2009, Mr. Hayes filed a motion to extend the service date, representing he had been diligent in attempts to secure service but it could not be completed as he did not know of Wilkins' current whereabouts. (Doc. 65-1 at Ex. 7; Doc. 61-2). In truth, for over a year, he had Wilkins' current address but had made no effort to serve her there. (Doc. 65-1, pp. 57:15-59:20). The court granted the motion, giving Plaintiff until January 22, 2010, to serve Wilkins. (Doc. 65-1 at Ex. 8; Doc. 61-4). Mr. Hayes included State Farm on the motion's certificate of service and on the order granting the motion. (Doc. 61-2, 61-4). Thereafter, he failed to include State Farm on subsequent pleadings and further failed to advise State Farm it would not receive notice of subsequent court filings. (Doc. 61-2, 61-8, 61-9, 61-10, 61-11, 61-12, 61-13).

Upon receipt of the motion and order, Martinez phoned and wrote Wilkins multiple times, seeking updated information as to service of the Summons and Complaint. He called Wilkins on September 23, September 29, October 6, November 9, November 24, and December 2, 2009, but was not able to reach her or leave messages on her cell (its mailbox function was full) (Doc. 62, p. 61:2-12, 71:6-21, 81:19-82:10, 92:5-93:9, 95:17-96:5 & Ex. 4: pp. 6-7). Martinez wrote Wilkins on September 23 and November 9, 2009, at 830 E. Main Street, asking to be contacted. (Doc. 63-1 at Exs. 10- 11, Doc. 62, pp. 81:19-82:13 & Ex. 25). The September 23 letter advised of the potential for Wilkins to be served with a lawsuit, asked that Wilkins accept service, and requested that she notify State Farm immediately if served so that it could secure suit papers and provide her a defense in the lawsuit. (Doc. 62 at Ex. 24). Wilkins testified this September 23 lawsuit advisement letter

"looked familiar" though she did not keep a copy. (Doc. 63-1, pp. 66:24-67:21). Martinez also called Wilkins' agent and 411 for updated numbers but neither had other numbers for Wilkins. (Doc. 62, pp. 92:5-93:9 & Ex. 4: pp. 6-7). He called Morgan & Morgan, leaving numerous messages over many months for Cindy, but she never returned his calls.[4] Meanwhile, Simon was sent to Dr. Katzman, who performed a three level cervical fusion, and during surgery, Dr. Katzman permanently damaged Simon's vocal cords, resulting in an extended hospital stay costing over $300,000. (Doc. 64-1, pp. 55:8-57:18; Doc. 42; Doc. 44).

On December 28, 2009, Martinez spoke with Attorney Hayes, discussed settlement, and noted that Attorney Hayes said he would get back with Martinez. (Doc. 62, pp. 102:24-103:11 & Ex. 4: p. 5). On December 30, 2009, Martinez received a call from Wilkins and noted updating Wilkins as to the claim's status as well as updating her contact information, and during this call, Martinez advised Wilkins to notify State Farm if served. (Doc. 62, p. 12:6-19, pp. 104:25-107:11 & Ex. 4: p. 5). Martinez testified unequivocally that Wilkins did not advise him of service during the December 30, 2009, phone call. (Doc. 62, p. 122:8-19, p. 126:15-17, p. 142:23-24). Wilkins' testimony is equivocal. She initially testified in the underlying action to having no recall of conversations with anyone at State Farm about the lawsuit.[5] Years later, she testified that she recalled two conversations with State Farm about the suit and recalled during the first conversation being told Simon was pursuing the claim, Wilkins would likely be served, and Wilkins should let

---

[4] Martinez called Morgan & Morgan on September 29, October 6, November 24, and December 2. (Doc. 62, pp. 69:4-12, 73:11-21, 91:1-13; 95:17-96:5 & Ex. 4: pp. 6-7).
[5] Wilkins testified that during this time she does not remember many conversations as she was having medical problems in 2009 and early 2010. (Doc. 63-1, p.71:3-25). These problems included re-learning how to walk, breathing problems, cognitive problems, and numerous neurological issues. (Doc. 63-1, p.74:1-16; pp.76:9-78:1) Further, in her 2012 deposition, Wilkins testified she did not remember events that happened after initial calls in 2006 with State Farm as she was in hospitalized a lot in 2009 and having cognitive problems. (See Doc. 63-1 at Ex 2, pp. 12:24-14:10).

State Farm know if that occurs. (Doc. 63-1, pp. 69:24-73:4; p. 80:1-20; p. 83:17-20). State Farm's file notes reflect that as of December 30, 2009, Wilkins had not advised that she had been served Doc. 62, p. 122:8-19, p. 126:15-17, p. 130:9-22 & Ex. 4: p.5). No record exists of her transmitting information about service to State Farm, and Wilkins acknowledged she did not send the summons and the complaint to State Farm as the policy requires. (Doc. 63-1, p. 87:5-9). Attorney Hayes did not provide notice of service to State Farm; he would "absolutely not" have told Martinez about service on Wilkins. (Doc. 65-1, pp. 78:6-79:25).

On February 17, 2010, Martinez called Wilkins, leaving a message on her cell and attempting her home phone, and on March 9, 2010, he again called Wilkins, leaving a voicemail, noting his intent to close the file due to no activity as Attorney Hayes had not returned his call, Wilkins was not served, and Wilkins was aware of suit procedures. (Doc. 62, pp. 141:22-142:13 & Ex. 4: pp. 4-5). Simon served Wilkins and secured a default. Simon and Wilkins proceeded with the lawsuit, choosing not to notify State Farm of happenings therein, although both were aware State Farm had not denied coverage. Wilkins received pleadings in the lawsuit including the 2/2/2010 Motion for Default; 2/4/2010 Default; 5/10/2010 Motion for Summary Judgment; 5/14/2010 Motion to Attend Hearing by Telephone; 5/14/2010 Notice of Telephonic Hearing; 6/4/2010 Order on Plaintiff's Motion for Summary Judgment; 7/6/2010 Amended Order Setting Pre-Trial Conference and Jury Trial and Directing Mediation; and 8/16/2010 Motion to Dispense with Mediation.[6] (See Doc. 63-1 at Exs. 13, 14, 15, 16, 17, 18, and 19). These documents were purportedly served upon Wilkins. (See Doc. 61-2, 61-8, 61-9, 61-10, 61-11, 61-12, 61-13; Doc. 65-1, pp. 86:23-88:1; p 90:10-24; pp. 92:19-93:5). Wilkins remembered receiving the Amended

---

[6] Wilkins disputes receiving the Motion for Default, Default, Motion for Summary Judgment, Notice of Telephonic Hearing, and Motion to Dispense with Mediation but acknowledged that such documents contained the correct address in the Certificate of Service. (Doc. 63-1. pp. 89:2-93:9; pp. 96:22-100:1).

Order Setting Pre-Trial Conference and Jury Trial and Directing Mediation and a copy of Plaintiff's Expert Witness List, Witness List and Evidence Schedule but did not provide any lawsuit papers to State Farm or contact State Farm about the suit. (Doc. 63-1, pp. 93:10-102:9).

Simon proceeded with a trial on damages. A Final Judgment of $2,082,892.06[7] was entered on October 4, 2010. (Doc. 22 ¶ 8; Doc. 61-18). Attorney Hayes testified there was no defense presented by Wilkins at trial. (Doc. 65-1, pp. 27:11-28:9). Wilkins testified she received the Notice setting the Trial, but did not attend trial. (Doc. 63-1, pp. 94:23-95:8, p. 100:2-23; Doc. 61-19). Wilkins was not served with the Final Judgment entered against her and had no notice of the Final Judgment within the time allotted to file post-trial motions, appeal, or set aside such Judgment. (Doc 63-1, pp. 99:16-100:1, p. 102:13-22 & Ex. 20; Doc. 61-18). Wilkins assigned her "rights, claims, and causes of actions" against State Farm to Simon (Doc. 2- Ex. 3), and Simon filed the instant action on October 3, 2014, and served State Farm on December 8, 2014.

At issue are Counts I and II alleging that State Farm breached its obligations as to the Simon claim under Wilkins' policy. Policy No. 8612-261-59J, issued the Wilkins, and in effect on the loss date provided bodily injury coverage, pursuant to the terms and conditions of the policy, with limits of $25,000/per person/ $50,000 per accident (Doc. 62 at Ex. 30), and provides, in part:

### REPORTING A CLAIM - INSURED'S DUTIES

**2.      Notice to Us of Claim or Suit**

If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received.

* * *

**5.      Insured's Duty to Cooperate With Us**

The *insured* shall cooperate with us and, when asked, assist us in:
        a.      Making settlements;

---

[7]   The judgment consists of damages Simon asked the jury to award for damages caused by Dr. Katzman in performing Simon's neck surgery. (Doc. 42; Doc. 44).

      b.     Securing and giving evidence;

      c.     Attending and getting witnesses to attend, hearings and trials.

The **insured** shall not, except at his or her own cost, voluntarily:

      a.     make any payment or assume any obligation to others; or

      b.     incur any expense, other than for first aid to others.

* * *

CONDITIONS

**2.**     **Suit Against Us**

     There is no right of action against us:

     a.     Until all terms of this policy have been met . . .

     b.     under the liability coverages, until the amount of damages an insured is legally liable to pay has been finally determined by:

          (1)     verdict after actual trial . . .

(Doc. 62 at Ex. 30). With regard to the defense of a lawsuit, the policy, after stating the insured's duties, provides that State Farm "will . . . defend any suit against an **insured** for such damages with attorneys hired and paid by us." (Doc. 62 at Ex. 30).

<u>Argument</u>

On summary judgment, the moving party bears the initial responsibility of demonstrating there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c); *see also Rios v. State Farm Mut. Auto. Ins. Co.*, No. 11-80571-CIV, 2012 WL 3230431, *1 (S.D. Fla. 2012) ("The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party."). In deciding whether the moving party has met this burden, the Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in its favor. *Navix Imaging, Inc. v. Lexington Ins. Co.*, No. 2:05-cv-469-FtM-29SPC, 2006

8

WL 3827436, *1 (M.D. Fla. Dec. 27, 2006). Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted); *see also Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992). Further, the Court should not grant summary judgment unless it is clear that a trial is unnecessary. *Rios*, 2012 WL 3230431, at *1. Here there are genuine issues of material fact as to Plaintiff's claims and State Farm's defenses which preclude summary judgment.

## I. Plaintiff's Motion Should be Denied as State Farm did Not Breach its Duty to Defend

State Farm does not dispute that it had the contractual right and duty to retain counsel to defend a "suit" against the insured. Plaintiff's motion, however, ignores the other terms of the Policy which affect that right and duty. *See Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000) (policies are to be interpreted as a whole). The Policy expressly required Wilkins to supply the insurer with notice that service of process has occurred as states that the insured must provide notice of "every legal process or summons received." As the Florida First DCA recently explained, the "[c]ontinuing notice" requirements of liability policies reflect that the insured is the party with the primary access to the information and is in "the best position to know when legal action has been taken against it." *Indemnity Ins. Corp. of DC v. Caylao*, 130 So. 3d 783, 786, n.6 (Fla. 1st DCA 2014) (discussing obligation of insured to provide copies to insurer of any demands, notices, summonses or legal papers received); *see also Campbell v. Cont. Cas. Co. of Chicago*, 170 F.2d 669, 670-71 (8th Cir. 1948) (duty to advise insurer of service of process).

An insurer must have the opportunity to exercise its right to control the defense of a liability claim through receipt of the complaint, process and notice of service. *Caylao*, 130 So. 3d at 786-

87.  It is the insured that is charged with providing notice of the summons and process served upon her.  *See, e.g., Am. Fire & Cas. Co. v. Collura,* 163 So.2d 784, 786-88 (Fla. 2d DCA 1964); *Caylao,* 130 So. 3d at 786, n.6.; *cf. Campbell,* 170 So. 2d at 671 (notice of insurer that suit had been filed,  the named insured was a named defendant, and that the driver had been served does not "inform the insurer whether the [named] insured . . . had been served with process and brought into court").  Notice that the insured has been brought into court is necessary for the insurer to exercise its rights under the policy to control the defense. *Hartford Acc. & Indem. Co. v. Mills,* 171 So. 2d 190,  195 (Fla. 1st DCA 1965) (notice requirements enable the insurer to be able to evaluate its rights and liabilities [such as the duty to defend a liability suit], to afford it an opportunity to make a timely investigation, and to prevent fraud and injustice upon it); *see also Collura,* 163 So. 2d at 788.  Thus, under Florida law Wilkins' duty to provide notice was not limited to providing notice of the accident and claim, but extended to providing notice of the service of process.[8]

Service upon the insured of a complaint or amended complaint has legal significance.  No court paper is required to be filed in response to a non-served complaint until the insured has been brought into court by service of process.  Plaintiff's memorandum initially discusses principles of policy interpretation relative to the term "suit" and the commencement of an action pursuant to Fla. R. Civ. P. 1.050 and the corresponding federal rule.  These arguments miss the mark, however, as

---

[8]  While Plaintiff cites some out-of-state cases supporting her position, other out-of-state cases conclude that the insured's duty of notice requires providing notice of service of the complaint.  *See, e.g., Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W. 2d 170, 174 (Tex. 1995) ("it was [the insured's] duty to notify State Farm of the suit against its insured when she received service of process; it was not State Farm's duty to determine when or if [the insured] was served."); *Campbell,* 170 F.2d at 671 (8th Cir. 1948); *Koski v. Allstate Ins. Co.,* 572 N.W.2d 636, 639 (Mich. 1998) (carrier has no duty to monitor whether service of process has occurred as insured has duty to provide notice of the service of the suit); *Cf. Jenkins v. State & Cnty. Mut. Fire Ins. Co.,* 287 S.W.3d 891, 899 (TDoc. 63-1pp. 2009) (where insured does not forward suit papers and request  a defense the carrier had no duty to defend him); *Liberty Mut. Ins. Co. v. Cruz,* 883 S.W.2d 164, 165 (Tex. 1993) (holding that failure to provide notice of suit until after default judgment is final prejudices insurer as a matter of law and relieves the insurer of liability under the policy).

State Farm does not contend that there was no "suit" prior to service, *cf. Hartford Acc. & Indem. Co. v. Beaver,* 466 F.3d 1289 (11th Cir. 2006)(contention that there was no "suit" prior to class certification rejected). Rather, State Farm contends a factual dispute exists as to whether Wilkins advised State Farm that she had been served with a complaint,[9] thereby triggering the time for a response to be filed on her behalf in Court. Plaintiff's discussion of the definition of a "suit" in the applicable Policy, its purported ambiguity and the non-mention of service in the defense section of the insuring agreement conflates the general principle of a duty to defend under a liability insurance policy with the timing of an obligation to respond to a complaint under the applicable rules of civil procedure, and reaches the wrong conclusion as a result.[10] The relevant question is the obligation, or absence thereof, to respond to the suit in this case.

The rules to correctly resolve that question are Fla. R. Civ. P. 1.140(a) and 1.070(j). Specifically, while a suit is commenced upon filing, there is no obligation to respond to a suit that has not been served. *See, e.g.,* Fla. R. Civ. P. 1.140(a) (a defendant shall serve an answer within 20 days after *service of original process* and the initial pleading *on the defendant*) (emphasis supplied). Unless service is waived, notification of the existence of a suit is irrelevant. The decisions on the duty to defend cited by Plaintiff, such as *Mid-Continent Cas. Co. v. Basdeo,* 742 F. Supp. 2d 1293 (S.D. Fla. 2010) and *Voeller Const., Inc. v. Southern-Owners Ins. Co.,* Case No. 8:13-cv-3169-T30-MAP, 2015 WL 1169420 (M.D. Fla. March 13, 2015), involved questions of what was an

---

[9] Whether a plaintiff has complied with policy obligations is a question of fact for the jury. *Redfish Key Villas Condo Ass'n, Inc. v. Amerisure Ins. Co.,* Case No. 2:14-cv-241-FtM-29CM, 2014 WL 5420297, *4 (M.D. Fla. Oct. 23, 2014).

[10] In footnote 10 of her memorandum, "Simon respectfully submits it is not even clear the term 'suit' requires an actual lawsuit to be filed," citing authority from other jurisdictions. State Farm submits that, to the extent it was ever unclear in Florida, any question has now been clarified by the decision in *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.,* -- F. Supp. 3d --, Case No. 13-80831-CIV, 2015 WL 3539755, **5,6 (S.D. Fla. June 4, 2015), holding that the inspection and repair provisions of Chapter 558, Fla. Stat. are not a "suit" that the insurer in that case was obligated to defend.

"accident" or "occurrence" under CGL policies, not whether a contractual obligation to respond to a lawsuit arises prior to notice of service. In *Jones v. Florida Ins. Guar. Assoc.*, 908 So. 2d 435 (Fla. 2005), the determinative fact was not service of the complaint, but the fact that the insurer made the conscious decision not to defend after determining, incorrectly as events turned out, that the claim was not covered under the policy. As the court noted, "FIGA had all information and simply made the unilateral decision that it would not defend the insured. These afterthought arguments [that FIGA was not notified of the suit] have no foundation." *Id.* at 452-53.

The effect of Fla. R. Civ. P. 1.070(j), which requires service of process on a named defendant within 120 days after suit is filed, cannot be ignored. That rule permits *sua sponte* dismissal as well as dismissal upon motion in the event service is not accomplished within the time specified. Thus, it is entirely possible that an unserved complaint could never result in liability on the part of a defendant, and Rule 1.070(j)'s requirement thus complements the fact that a defendant's obligation to respond to a complaint is triggered by service under Rule 1.140(a).[11] *Illinois Founders Ins. Co. v. Barnett*, 710 N.E.2d 28 (Ill. App. 1999), discussed in depth in Plaintiff's motion, is not applicable to the issue at hand because Illinois does not have a procedural rule that corresponds to Rule 1.070(j). *Barnett* was decided from a different perspective created by a different framework of procedural rules. Given Florida's procedural rules, State Farm cannot be liable for failure to commence a defense when informed of the existence of a complaint to which

---

[11] A party has no obligation to defend a lawsuit if it has not been served with the summons and complaint. *See Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-3073 MMC, 2007 WL 660083, *1 (N.D. Cal. Feb. 28, 2007) ("A party has no duty to defend, however, unless it has been served with the summons and complaint, or waives such service..."). Indeed, as noted by the Florida Supreme Court, relying upon United States Supreme Court precedent: "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Tortura & Co., Inc. v. Williams*, 754 So. 2d 671, 678 n.5 (Fla. 2000) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (emphasis added)). If a party has no duty to defend an unserved lawsuit, certainly an insurance company, acting on behalf of that party, likewise has no duty to defend or engage in litigation until it is at most aware of formal process.

no response was yet required.

Another point bears mention in this regard. Whether State Farm would have been obligated to defend Wilkins does depend upon the allegations of the actual complaint served upon Wilkins, not upon a complaint filed but thereafter amended before service for example. *See, e.g., Mackin v. Applestein*, 404 So. 2d 789, 790 (Fla. 3d DCA 1981) (the duty to defend flows from the "operative complaint" against the insured and therefore authorized amendments to the complaint must be analyzed); *cf. Sussman v. Am. Sur. Co. of New York*, 345 F.2d 679, 680 (5th Cir. 1965) (insurer was not liable for default judgment because the insurer was neither notified of the amended complaint nor given an opportunity to participate in the defense on the merits).

No Florida case establishes that an insurer has an independent obligation to determine whether the insured had been served with process and the status of the litigation. The language of the policy does not "impose[] on the insurer, merely because it knows that an insured has been named as a defendant in an action, the sentry duty of tracking back and forth to the court house to keep a check on if or when [the insured] may be served with process." *Campbell*, 170 F.2d at 671. An insurer has no obligation to exercise diligence and good faith in bringing about the insured's compliance with the notice requirements. *See Collura*, 163 So. 2d at 787-89 (distinguishing duty of notice from duty to cooperate). The insured is charged with the obligation of providing notice of service of process under the Policy. Failure by an insured to send "copies of legal papers received in connection with the lawsuit" is a "breach of [the insured's] obligations under [her] contract of insurance." *Caylao*, 130 So. 3d at 786; *see also Peck v. Public Serv. Mut. Ins. Co.*, 326 F.3d 330, 338 (2d Cir. 2003) (issues of fact as to notice to insurer and whether the insurer was deprived of its right to defend precluded summary judgment); *cf. Maronda Homes, Inc. of Florida v. Progressive*

*Exp. Ins. Co.,* __ F. Supp. 3d __, Case No. 6:14-cv-1287-ORL-31TBS, 2015 WL 4716108, *3 (M.D. Fla. Aug. 7, 2015) (on appeal)(no basis to allege inadequate defense by insurer where insured precluded insurer's efforts).[12]

Finally, Plaintiff has not established by undisputed facts that Wilkins was released from her notice obligations under the policy. In *Caylao,* 130 So. 3d at 785 n.5, the court explained that an insured is not released from contractual duties where the insurer cannot be said to have "disavowed its obligation to defend [the insured] in the event claimant filed suit" and would the insured have reason to believe it had been released from its obligation to notify the insurer of the suit. In this case, State Farm did not disavow its obligations under the Policy such that Wilkins could reasonably believe that State Farm had no interest in the suit. The cases cited by Plaintiff are inapposite, as this is not a case in which State Farm advised Wilkins that it would not defend her as to the Simon claim, *see, e.g, Gallagher v. Dupont,* 918 So. 2d 342, 347 (Fla. 5th DCA 2005) (retained counsel advised court that would not defend estate in suit) or even that State Farm would only defend under a reservation of rights; *see e.g., Western Heritage Ins. Co. v. Montana,* 30 F. Supp. 3d 1366, 1372 (M.D. Fla. 2014) *aff'd,* 2015 WL 7423618 (11th Cir. 2015).

After State Farm had notice of the accident and claim, State Farm investigated and made offers to settle the claim, advising the claimant's attorneys that liability benefits were available

---

[12]  The entry of a default judgment against an insured materially prejudices the insurer, and can preclude recovery against it if the default judgment was entered without notice to the insurer of a defensible suit, unless the insurer unjustifiably refused to file and pursue a viable motion to set the judgment aside. *Caylao,* 130 So. 3d at 787; *see also Thyssen, Inc. v. NOBILITY MV,* 421 F.3d 295, 303 (5th Cir. 2005)("the "insurer's loss of opportunity to litigate the action weighs in favor of finding prejudice," and "[i]f damages have been tried and found, this also weighs in favor of prejudice"); *see, e.g., Mimmitt v. Allstate Cnty. Mut. Ins. Co.,* 928 So. 2d 203 (Miss. Ct. App. 2006) (holding insurer that received no notice of lawsuit against insured was not liable for default judgment against insured; the insurer was prejudiced by loss of opportunity to defend the suit). If the insurer is prejudiced by the insured's failure to comply with the policy notice provision, the insurer is relieved of all liability under the policy. *Hamid Pharm.D v. Founders Ins. Co.,* 41 F. Supp. 3d 1412, 1415 (S.D. Fla. 2014) *see also Sussman v. Am. Surety Co. of New York,* 345 F.2d 679, 680 (5th Cir. 1965); *Liberty Mut. Ins. Co. v. Cruz,* 883 S.W.2d 164, 165 (Tex. 1993).

under the policy. As soon as State Farm learned of the lawsuit, it contacted Wilkins to advise of the possibility for service of the suit papers, and advised that it would provide a defense for covered claims resulting from the loss. State Farm also contacted Simon's attorney to engage in settlement negotiations and inquire about how the lawsuit would proceed. The record is devoid of any evidence that State Farm "disavowed its obligation to defend"; all evidence is, in fact, to the contrary. Wilkins was required to notify State Farm of service of the complaint for State Farm to be obligated to hire counsel to respond to the complaint. The facts establish State Farm took steps to protect Wilkins based upon information she provided such that it did not breach the contract.

## II. Plaintiff's Motion Fails to Meet Burden as to State Farm's Affirmative Defenses

Plaintiff's burden as the moving party on summary judgment is to establish that State Farm's defenses are invalid or legally insufficient. *In re Basil Street Partners, LLC*, No. 9:11-bk-19510-FMD, 2012 WL 6101914, *13 (Bankr. M.D. Fla. Dec. 7, 2012). Where affirmative defenses for which the non-moving party bears th burden of proof exist, the moving party must either identify specific portions of the record which show the absence of evidence to prove the non-moving party's case or come forward with affirmative evidence showing that the non-moving party will be unable to prove its case at trial. *See Celotex Corp.*, 477 U.S. at 323; *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991).

Here, Plaintiff has failed to meet her burden and her Motion for Final Summary Judgment must be denied. Plaintiff's motion ignores record evidence supporting numerous affirmative defenses and argues instead that since State Farm did not defend Wilkins in relation to Simon's case, its failure to defend ends the analysis, and this Court need not consider Wilkins' breach of the policy's notice provisions or consider any "lack of cooperation by Wilkins" since "State Farm

failed to comply in good faith with the terms of this policy." This over-simplistic, incomplete view of the law and neglect of record evidence supporting pled affirmative defenses is detrimental to Plaintiff's motion. State Farm has pled numerous affirmative defenses apart from Wilkins' breach of the notice provisions, including, among others, Wilkins' failure to cooperate, her failure to mitigate her damages, Simon's unclean hands, extrinsic fraud, and laches. Plaintiff does address these or the other defenses pled, thereby not meeting her burden on summary judgment. Sufficient evidence supports the affirmative defenses such that material issues of fact exist for a jury.

### A. Failure to Cooperate & Assumption of Liability (Affirmative Defenses 3 & 7)

As acknowledged by Plaintiff, State Farm has alleged that Wilkins materially breached her duty to cooperate causing prejudice to State Farm such that it is excused from its duties under the Policy. The Policy provides that the "insured shall cooperate with us, and when asked, assist us" in "making settlements," "securing and giving evidence," and "attending and getting witnesses to attend, hearings and trials," and further provides the insured shall not "voluntarily . . . assume any obligation to others." An insured's failure to cooperate, if a material and prejudicial breach of the policy, releases the insurer's obligations under the policy. *W. Heritage*, 30 F. Supp. 3d at 1372. The insured's duty to cooperate is ongoing and, here, the facts demonstrate Wilkins materially breached the duty by ignoring court papers served on her, not giving State Farm notice of the default, summary judgment and trial, and by not responding to communications from State Farm seeking information as to service and the status of litigation.

State Farm's due diligence and good faith in trying to bring about the insured's cooperation can be shown or at a minimum inferred from, among other evidence, its repeated calls and letters to the insured seeking updated information about the claim and suit against her. *Cont'l Cas. Co. v.*

*City of Jacksonville*, 283 F. App'x. 686, 692-93 (11th Cir. 2008) (insurer exercises due diligence and good faith in securing cooperation of insured by making efforts to communicate and instructing the insured to notify it of any developments in the underlying matter). Further, State Farm never disavowed its defense or indemnity obligations under the Policy such that Plaintiff can contend that State Farm repudiated its obligations under the policy thereby excusing Wilkins' non-performance. *Caylao*, 130 So. 3d at 786; *see also Philadelphia Indem. Ins. Co. v. Kohne,* 181 F. App'x 888, 891 (11th Cir. 2006) ("unequivocal" denial of coverage by insurer may forfeit right to attack insured's cooperation). Factual issues exist for the jury to evaluate the communications between the insurer and insured and the actions taken by each under an objective standard. *Cf. Izadi v. Machado (Gus) Ford, Inc.*, 550 So. 2d 1135, 1139 (Fla. 3d DCA 1989) (applying objective and reasonable test to contract action); *Burlington & Rockenbach, P.H. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 958 (Fla. 5th DCA 2015).

The evidence shows Wilkins, knowing of the default and that a trial was being held, chose not to take any action in defense of the suit. Whether Wilkins voluntarily assumed liability to Simon in violation of the contract, which breach was material and prejudicial to State Farm[13], is a jury issue. Even if the jury determines that State Farm breached its duty to defend, Wilkins had an obligation to defend herself and mitigate her damages, which she failed to do. *Caylao*, 130 So. 3d at 788; *Thomas v. Western World Ins. Co.*, 343 So. 2d 1298, 1303 (Fla. 1st DCA 1977) (insured must take all reasonable means to mitigate her damages by hiring counsel to represent her and take some action in her own defense); *see also Sullivan v. McMillan*, 19 So. 340 (Fla. 1896); *Tampa Pipeline Transp. Co. v. Chase Manhattan Serv. Corp.* 928 F. Supp. 1568, 1579 (M.D. Fla. 1995).

---

[13]   The prejudice to State Farm caused by Wilkins' material breaches is evident. Plaintiff obtained a $2 million judgment which was predicated on damages caused by others and a defense against the unrelated damages and the preservation of a subsequent equitable subrogation claim could have been successfully pursued by Wilkins.

Wilkins received numerous court papers and pleadings, including the Notice of Trial, and each showed no attorney had appeared in the action on her behalf. Wilkins chose to take no action on her own behalf in defense of the claim. Factual issues relating to Wilkins' failure to mitigate her damages exist and preclude the grant of Plaintiff's Motion.

### B. Other Affirmative Defenses

The doctrine of unclean hands closes the door of a court to one who is guilty of conduct condemned by honest and reasonable men, including concealment. *See Hensel v. Aurilio*, 417 So. 2d 1035, 1038 (Fla. 4th DCA 1982) (equating unclean hands with "[u]nscrupulous practices, overreaching, concealment, trickery, or other unconscientious conduct"). Simon and her counsel improperly obtained an extension of time to complete service on Wilkins by representing that Wilkins' whereabouts were unknown and diligent efforts had been made to complete service when, in truth, Wilkins' whereabouts had been known to Simon's counsel for nearly one full year and during that year, no efforts by him had been taken to complete service. State Farm never disavowed coverage to Simon or any of her lawyers nor advised them that no defense would be provided to Wilkins. Mr. Hayes, Simon's trial counsel, knowing State Farm intended to defend the suit if it did not settle, intentionally kept from State Farm notice that he had served Wilkins and had defaulted her. *See, e.g., Ole, Inc. v. Yariv By & Through Yariv*, 566 So. 2d 812, 814-15 (Fla. 3d DCA 1990) (setting aside a default where plaintiff's counsel knew party intended to defend the suit and had spoken to the insurer, and explaining that default is not a procedure intended to furnish an advantage to the plaintiff so that a result may be reached without a contest by the defendant); *McGee v. Reynolds*, 618 N.E.2d 40, 41 (Ind. Ct. App. 1993) (concealing the status of his client's law suit demonstrated a lack of good faith and chicanery). Additionally, Mr. Hayes had notice of

the trial court's order on mediation, which required an insurance representative of an insured party attend the mediation conference and tasked Mr. Hayes, as Simon's Counsel, with seeking agreement with *all concerned* as to the choice of mediator and with scheduling the mediation conference at a time agreeable to *all concerned.* Mr. Hayes sought instead to dispense with mediation to conceal it and the suit from State Farm, inaccurately representing in his motion that he "cannot complete mediation as the Defendant will not accept correspondence or address with Plaintiff's counsel or Plaintiff the issues pending before this court." In truth, Plaintiff's counsel made no attempt to contact Wilkins or State Farm to schedule any mediation or discuss any other matter tasked to him in the court's order.

This evidence also shows Plaintiff and her attorneys engaged in conduct of extrinsic fraud, and successfully kept State Farm away from Court. *See Fair v. Tampa Elec. Co.*, 27 So. 2d 514, 515 (Fla. 1946) ("Illustrations of fraud . . . [include] keeping the opponent away from court"); *Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co. Inc.*, 20 So. 3d 952, 957-58 (Fla. 4th DCA 2009) (explaining that extrinsic fraud is conduct "which prevents a party from trying an issue before the court"); *Dep't of Revenue ex rel. Stephens v. Boswell*, 915 So. 2d 717, 720-21 (Fla. 5th DCA 2005) (finding that extrinsic fraud occurs where a party has been "prevented from participating in a cause"). At all material times, Simon and her attorneys knew that Wilkins had a liability policy in place on the loss date issued by State Farm which applied to the accident, and knew that State Farm had not asserted any coverage defenses in relation to the policy. Simon and her attorneys thereafter included State Farm on the certificate of service list on Simon's Motion to Extend Time for Service of Process, representing to State Farm that service on Wilkins had not been perfected and that State Farm would be provided additional papers filed in the matter.

Thereafter, State Farm sought updates as to service of suit papers from Simon and her attorneys, who represented on December 28 that no service had occurred. After serving Wilkins on December 30, Simon did not advise State Farm of service and removed State Farm from the certificate of service of court papers filed in that action without correcting Simon's prior representations that no service had occurred. Simon knew that this misrepresentation would mislead State Farm and, in fact, Simon's attorney intentionally kept information relating to the lawsuit from State Farm, including notice that service had been perfected, a default had been taken, summary judgment had been entered, the trial's date had been sent, the court had ordered State Farm to attend mediation, and that a judgment had been entered against the insured. Simon's conduct in keeping State Farm away from the court action damaged State Farm as it precluded State Farm from litigating issues affecting the judgment entered against the insured.

Evidence exists upon which a jury could find that State Farm justifiably and detrimentally relied on explicit and implied representations by Plaintiff and her attorneys that Plaintiff would advise State Farm of the suit's status should it go forward. Such a finding would bar recovery in this action under the principle of equitable estoppel. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001); *see also Phoenix Ins. Co. v. McQueen*, 286 So. 2d 570, 572 (Fla. 1st DCA 1973). Additionally, factual issues remain as to whether laches bars such action. Despite the opportunity to institute suit against State Farm earlier, Plaintiff instead waited four years to file suit seeking a determination of the parties' rights and obligations under the contract. The suit's delay has resulted in injury to State Farm, including the lost opportunity to take actions to set aside the judgment or view the evidence in the Court file from the underlying litigation.

**TAYLOR, DAY, GRIMM, & BOYD**

*/s/ Carol M. Bishop*
**CAROL M. BISHOP**
Florida Bar No. 821357
cmb@taylordaylaw.com
**GINA P. GRIMSLEY**
Florida Bar No. 84561
gpg@taylordaylaw.com
50 North Laura Street, Suite 3500
Jacksonville, FL 32202
Phone: (904) 356-0700/Fax: (904) 356-3224
Attorneys for STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

## Certificate of Service

I HEREBY CERTIFY that on the 18th day of __December__, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Carol M. Bishop*