UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAREN SIMON,

    Plaintiff,                                   CASE NO.: 6:14-cv-2125-Orl-37GJK

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.
_____/

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiff KAREN SIMON ("Simon"), by and through her undersigned counsel and as permitted by this Court's Case Management Order, hereby files this Reply to Defendant's Response and Memorandum of Law In Opposition To Plaintiff's Motion for Summary Judgment. Plaintiff respectfully submits she is entitled to final summary judgment as a matter of law, irrespective of the arguments raised by Defendant in its Response.

**A.**     **Plaintiff's Motion for Summary Judgment Presents A Narrow Legal Issue.**

The narrow legal issue posed by Plaintiff's summary judgment motion is as follows:

> Did State Farm have a duty to defend Lori Wilkins, its insured, upon receiving notice a personal injury lawsuit had been filed against her by Simon, even though Wilkins had not been served yet?

Plaintiff respectfully submits the undisputed facts, State Farm's Policy language, and the relevant case law unequivocally establish the answer to this question is "yes." State Farm's duty to defend Wilkins arose as soon as State Farm acquired knowledge of Simon's pending lawsuit against Wilkins, and State Farm breached this duty when it failed to retain an

attorney to defend and protect Wilkins' interests.[1]

**B.    Only A Few Simple, But Undisputed, Facts Are Material To This Legal Issue.**

State Farm spends an inordinate amount of time outlining and describing evidence which has no relevance whatsoever to the narrow legal issue identified above. While State Farm is attempting to create the impression there is an issue of fact precluding summary judgment, there are, in reality, only a few simple and undisputed facts which are relevant to the issue of whether State Farm breached its duty to defend Wilkins. These facts are:

(1)    State Farm was notified of the January 2006 automobile accident involving Simon and Wilkins immediately after it occurred;

(2)    State Farm had notice in 2006 of Simon's bodily injury claim;

(3)    No later than September 23, 2009, *more than four months before a clerk's default was entered and more than one year before a final default judgment was entered against Wilkins*, State Farm knew Simon had filed a "suit" against Wilkins;[2] and,

(4)    State Farm never retained an attorney to represent Wilkins; instead, it simply closed its file without ever confirming whether service had been effected.[3]

State Farm's alleged inability to contact Wilkins is irrelevant for purposes of

---

[1] On page 11 of its Response, State Farm incorrectly identifies the "relevant question" as "the obligation, or absence thereof, to *respond* to the suit in this case." (emphasis added). Neither the Policy language nor the relevant case law support this argument. The relevant question is not whether Wilkins had been served and, thus, had an obligation to respond to the complaint, but whether State Farm was contractually obligated to retain an attorney to protect Wilkins once a formal lawsuit (of which State Farm had knowledge) had been filed.

[2] State Farm also knew where the lawsuit had been filed, the case number and name, the name of the Judge assigned to the case, and the identity of opposing counsel. Moreover, a quick online review of the docket posted on the Polk County Clerk of Court's website would have easily revealed the status of service. The State Farm Policy expressly states State Farm will defend any "suit" against Wilkins, and State Farm admits that "State Farm does not contend that there was no 'suit' prior to service." (State Farm's Response, p. 11).

[3] State Farm apparently *assumed* Simon's counsel would commit malpractice by failing to ensure Wilkins was served by the January service deadline ordered by the court.

Plaintiff's Motion for Summary Judgment. Plaintiff acknowledges State Farm had problems contacting Wilkins, and acknowledges the parties disagree about whether the communication issues were the fault of State Farm or were the fault of Wilkins. Such a dispute, however, is entirely irrelevant to the narrow issue before this Court. Whether or not State Farm had Wilkins' correct address and was able to communicate with her, *it is undisputed State Farm knew about the accident, knew about the claim, knew about the lawsuit and, yet, failed to provide a defense to protect its insured.* The alleged communication issues did not result in State Farm's lack of notice of the claim or lawsuit and, thus, did not prejudice State Farm.

Moreover, although State Farm asserts a fact issue exists as to whether Wilkins "cooperated," any such dispute is likewise irrelevant. Unlike the factual scenarios in the case law State Farm cites to support its position (discussed later herein), this case does not involve a situation where the insured's alleged lack of cooperation or failure to communicate with the insurance company somehow deprived the insurance company of knowledge of the accident, knowledge of a claim, or knowledge of a lawsuit, thus rendering the insurance company incapable of defending and protecting the insured (and itself). To the contrary, it is undisputed that, irrespective of any communication problems State Farm may have had with Wilkins, State Farm had notice of all three events (accident, claim, and suit). Moreover, once State Farm was notified of the lawsuit and breached its duty to defend by failing to retain defense counsel, its material breach of the Policy precluded it from relying on any subsequent alleged cooperation issues with Wilkins as a basis upon which to deny a defense.

C.     **State Farm Is Relying On Case Law Which Does Not Support Its Position.**

Throughout its Response, State Farm relies on inapposite case law. Specifically, State

3

Farm mistakenly relies on cases where, unlike the instant case, the insured failed to give the insurer notice of an accident, notice of a claim, or notice of a lawsuit. While Plaintiff does not disagree with the assertion that State Farm had a right to notice of these three events, it is undisputed State Farm, in fact, had notice of all three of these events.

State Farm mistakenly relies on many cases where, unlike the situation in this case, the liability insurer did not receive notice a lawsuit had been filed against its insured *until after a default judgment had been entered against its insured.* See Redfish Key Villas Condo. Assoc., Inc. v. Amerisure Ins. Co., 2014 WL 5420297 (M.D. Fla. Oct. 23, 2014); Hamid Mohebbi Pharm.D v. Founders Ins. Co., 41 F. Supp. 3d 1412 (S.D. Fla. 2014); Indemnity Ins. Corp. of DC v. Caylao, 130 So. 3d 783 (Fla. 1st DCA 2014). See also Thyssen, Inc. v. Nobility MV, 421 F.3d 295 (5th Cir. 2005); Peck v. Public Service Mutual Ins. Co., 326 F.3d 330 (2nd Cir. 2003); Sussman v. American Surety Co. of N.Y., 345 F.2d 679 (5th Cir. 1965); Mimmitt v. Allstate County Mut. Ins. Co., Inc., 928 So. 2d 203 (Miss.2006).

In Hartford Accident and Indemnity Company v. Mills, 171 So. 2d 190 (Fla. 1st DCA 1965), cited by State Farm, the insurer had no knowledge whatsoever that its insured had been involved in an accident and, thus, had no opportunity to investigate the accident, until a lawsuit was filed against the insured nine months later. To the contrary, State Farm had notice of the accident immediately after it occurred, investigated the accident, took photos, spoke with the parties, received a bodily injury claim from Simon, and even entered into settlement negotiations with Simon prior to her filing of a personal injury lawsuit (of which State Farm obtained knowledge more then one year before a default judgment was entered).

In Maronda Homes, Inc. of Florida v. Progressive Express Ins. Co., 2015 WL

4716108 (M.D. Fla. Aug. 7, 2015), relied on by State Farm in support of its position an insured cannot allege an inadequate defense where the insured precluded the insurer's efforts to provide a defense, the issue was whether the insured could recover attorneys' fees from the insurer to pay for an attorney of the insured's choosing. Unlike the instant case, the insurer in <u>Maronda Homes</u> actually retained a 30 year board-certified civil trial attorney to defend the insured, who rejected that attorney in favor of his own attorney.

State Farm also curiously relies on <u>American Fire and Casualty Co. v. Collura</u>, 163 So. 2d 784 (Fla. 2d DCA 1964). First, <u>Collura</u> is factually distinguishable from the instant case, because the insurer was notified of service by the claimant. Second, the <u>Collura</u> court's rationale is actually supportive of Plaintiff's position. There was no communication between the insured and the insurer from the time the insured advised the insurer of the accident until after a default judgment was entered, and the insurer argued the claimant's forwarding of the "suit papers" did not satisfy the insured's obligation to do so. The court disagreed:

> We are of the view that the timely receipt by the insurance company of the suit papers, from whatever source, meets the intent and purpose of that condition which requires the insured to forward suit papers to the insurer . . . This holding places Florida with the great weight of authorities who share the view that it matters not who gives the notice or who furnishes copies of the suit papers, so long as the notice is given and the copies furnished - ***so that the insurance company may have an opportunity to investigate the claim and defend the suit***.

<u>Id.</u> at 787-788 (emphasis added). According to the court, notice of an accident and notice of a claim or suit are necessary in order "to enable the insurance company to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." <u>Id.</u> at 790. Thus, the insured's failure to forward suit papers to the

insurer, where the insurer already had notice of the suit by the plaintiff's counsel "amount[ed] to nothing more than a technical or inconsequential lack of cooperation which did not prejudice the insurance company." Id. at 789. Likewise, State Farm had notice of the accident, notice of the claim, and notice of the lawsuit. It had the opportunity to investigate Simon's claims, to evaluate its rights and liabilities, and to defend the lawsuit.

Plaintiff acknowledges State Farm has cited a few cases *outside Florida* where courts have found an insured must be served before a duty to defend is triggered. Specifically, State Farm has cited a 1948 case from the Eighth Circuit Court of Appeals, Campbell v. Continental Casualty Co. of Chicago, 170 F.2d 669 (8th Cir. 1948)[4] and three cases from Texas where it was held notice of service is required.[5] Plaintiff respectfully submits the few cases cited by State Farm are clearly outweighed by the following factors, each of which clearly supports the entry of summary judgment in Plaintiff's favor:

(1) The State Farm Policy specifically states State Farm will defend any "suit" seeking damages for bodily injury against an insured without referring to any requirement of *service* in order to trigger that defense duty;

(2) State Farm admits there was a "suit" prior to service;

(3) The term "suit" is undefined in the Policy, and undefined terms are to be liberally construed in favor of the insured and in the manner providing broadest coverage;

---

[4] At the top of page 10 of State Farm's Response, State Farm's counsel cites Campbell as "170 So. 2d" instead of "170 F. 2d." Plaintiff wants to ensure this 1948 Eighth Circuit opinion is not mistaken for a Florida state court decision as a result of this typographical error.

[5] In Liberty Mutual Ins. Co. v. Cruz, 883 S.W.2d 164 (Tex. 1993), one of the Texas cases cited by State Farm, the liability insurer claimed it never received notice of the accident when it occurred, nor did it receive notice of the lawsuit against its insured until forty-one days *after* the entry of default judgment against its insured.

(4) As discussed thoroughly in Plaintiff's Motion, courts evaluating an insurer's duty to defend under Florida law do not reference any service requirement in order to trigger the insurer's defense duty and, instead, consistently emphasize and focus solely on the role of the filed complaint and whether it alleges covered conduct;

(5) Several out of state cases support the position the insurer's notice of the lawsuit is sufficient to invoke the duty to defend and notice of service is not required;[6]

(6) Other out of state courts have similarly held an insurer's actual notice that a lawsuit has been filed against its insured triggers the duty to defend;[7]

(7) One of the cases holding an insurer's actual notice a lawsuit has been filed against its insured triggers the duty to defend, <u>Federated Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.</u>, 668 N.E.2d 627, 632-633 (Ill. App. 1996), was cited with approval by the United District Court for the Southern District of Florida in <u>Scottsdale Ins. Co. v. Shageer</u>, 2010 WL 4961166, *8 (S.D. Fla. Dec. 1, 2010); and,

(8) There are many cases outside of Florida which, *without considering service*, find a duty to defend is triggered by the filing of a claim or lawsuit.[8]

---

[6] See <u>Biegler v. American Family Mut. Ins. Co.</u>, 621 N.W.2d 592, 600 (S.D. 2001)(holding the term "suit" in the policy "does not tell us that [the insured] had the obligation to accept service of process and provide proof of the same prior to [the insurer] being obligated to defend"); <u>Illinois Founders Ins. Co. v. Barnett</u>, 710 N.E.2d 28, 32-34 (Ill. App. 1999)(holding "the actual notice standard only requires the court to determine whether the notice the insurer received sufficiently enabled it to locate and defend the lawsuit" and "reject[ing] [the insurer's] attempt to impose an additional element for compliance with the actual notice standard by requiring that an insurer also receive notice of service of summons on the insured in order to trigger the duty to defend").

[7] See <u>DeStefano v. Cochran</u>, 491 F. Supp. 2d 796 (N.D. Ind. 2007); <u>Garcia v. Underwriters at Lloyd's London</u>, 182 P.3d 113 (N.M. 2008); <u>Baker Donelson Bearman & Caldwell, P.C. v. Muirhead</u>, 920 So. 2d 440 (Miss. 2006); <u>Dearborn Ins. Co. v. International Surplus Lines Ins. Co.</u>, 719 N.E.2d 1092 (Ill. App. 1999); <u>Federated Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.</u>, 668 N.E.2d 627 (Ill. App. 1996).

[8] See <u>Simon v. Maryland Casualty Company</u>, 353 F.2d 608, 612 (5th Cir. 1965); <u>Pizza Magic International, LLC v. Assurance Company of America</u>, 447 F. Supp. 2d 766, 779 (W.D. Ky. 2006); Aetna Casualty & Surety

**D. State Farm's Failure To Retain Attorney In Face Of Ongoing Lawsuit Constitutes Denial Of Defense.**

State Farm repeatedly states it never "disavowed" or otherwise denied coverage or a defense to Wilkins. (State Farm Response, pp. 14, 15, 17). However, the fact State Farm never formally notified Wilkins either orally or in writing of an affirmative decision not to defend her is irrelevant in light of State Farm's actual conduct. By doing nothing when faced with an actual lawsuit against Wilkins, State Farm effectively denied its insured a defense through its own inaction. Otherwise, an insurer could always avoid liability for breaching a duty to defend its insured, simply by avoiding any oral or written statements affirmatively disavowing a defense.

**E. Policy Language Does Not Make Service A Condition Precedent To Defense Obligation.**

State Farm discusses the Policy clauses addressing its duty to defend and the Policy clauses addressing Wilkins' duty to provide notice and to cooperate in a manner which incorrectly suggests State Farm's duty to defend is invoked only *after* the insured provides copies of the summons and otherwise cooperates. On page 7 of its Response, State Farm quotes the Policy section addressing the insured's duty of notice and duty of cooperation. Thereafter, State Farm only briefly cites the duty to defend provision:

> With regard to the defense of a lawsuit, the policy, ***after stating the insured's duties***, provides that State Farm 'will . . . defend any suit against an *insured* for such damages with attorneys hired and paid by us.'"

(State Farm's Response, p. 8). In reality, these sections of the Policy are separate. The

---

Co. v. Dow Chemical Co., 44 F. Supp. 2d 847, 854 (E.D. Mich. 1997); Black v. Allstate Insurance Company, 100 P.3d 1163, 1170 (Utah 2004); Kirk v. Mt. Airy Insurance Company, 951 P.2d 1124, 1126 (Wash. 1998).

insured's duties are stated on a separate page entitled "Reporting a *__Claim__* - Insured's Duties." Pursuant to these duties, the insured is required to give notice to State Farm of the accident or loss and notice of a "claim or suit" against the insured. While the Policy also requires the insured to provide demands, notices, summonses, or legal process, *nothing in the Policy* requires the insured to provide copies of the summonses *as a condition precedent* to the insurer's duty to defend the insured from a known lawsuit. The separate Liability Coverage section which sets forth the insurer's duty to defend the insured contains no reference whatsoever to "service" of process. Instead, the provision merely states State Farm will "defend *__any suit__* against an insured."

**F.     Wilkins Did Not Have Duty To Defend Herself As Claimed By State Farm.**

State Farm incorrectly states that *even if it breached its duty to defend*, Wilkins had an obligation to defend herself in order to mitigate her damages. State Farm's rationale is inconsistent with recent Florida decisions, which hold where a liability insurer wrongfully refuses to defend an insured against a claim, the insured may enter into a consent judgment for liability with the adverse party and bind the insurer, if coverage exists. Petro v. Travelers Cas. & Sur. Co. of Am., 54 F. Supp. 3d 1295, 1302 (N.D. Fla. 2014). See also Perera v. U.S. Fidelity and Guaranty Co., 35 So. 3d 893, 900 (Fla. 2010)("Florida courts have also extended the reasoning of Coblentz to allow agreements by the insured to a judgment in excess of the policy limits against an insurer who wrongfully refuses to defend and acts in bad faith").

**G.     Affirmative Defenses Do Not Preclude Summary Judgment In Favor of Plaintiff.**

State Farm argues summary judgment is improper because of its assertion of affirmative defenses based on "unclean hands," fraud, concealment, and equitable estoppel.

All of these defenses are based on State Farm's argument Simon, the claimant, and Simon's attorney engaged in misconduct, concealment, and trickery and intentionally tried to keep State Farm away from the underlying court action. ***However, nowhere does State Farm ever claim Wilkins, its insured, had "unclean hands" or engaged in trickery, fraud, or bad faith***. Because the issue in this case is whether State Farm breached its contractual obligations to *Wilkins* and because, in this case, Simon is Wilkins' assignee, the conduct of Simon and/or his attorneys is entirely irrelevant. See generally, Aidone v. Nationwide Auto Guard, LLC, 295 F.R.D. 658, 661 (S.D. Fla. 2013)("unclean hands" defense requires that the alleged wrongdoing at issue [i.e., conduct by Simon's attorney] is directly related to the claim against which it is being asserted [i.e., State Farm's contractual obligation to *Wilkins*, its insured]). Misconduct by a claimant or her attorney does not excuse an insurer's contractual obligations to its insured. In fact, it is the very risk of such trickery by a claimant which makes it so important that insurance companies ensure their insureds are protected.

**H.     Conclusion**

The narrow issue before this Court is whether State Farm, who undisputedly received timely notice of the accident and Simon's bodily injury claim, had a duty to retain an attorney to defend Wilkins when it also obtained knowledge a lawsuit had actually been filed against her or whether it had the right to do nothing, even close its file, simply because it had not received notice of service. Plaintiff respectfully submits the former is true, and State Farm's duty to defend Wilkins was undeniably triggered when it discovered a lawsuit had been filed against her. State Farm then breached this duty by failing to retain counsel to defend Wilkins, leaving her unprotected and resulting in a default judgment in excess of $2 million.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Carol M. Bishop, Esq. (cmb@taylordaylaw.com) and Gina P. Grimsley, Esq. (gpg@taylordaylaw.com), Taylor, Day, Grimm & Boyd, 50 North Laura Street, Suite 3500, Jacksonville, FL 32202. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail **or** email to the following non-CM/ECF participants: Steven W. Igou, Esq. (woodyigoulaw@gmail.com), Law Offices of Steven W. Igou, 271 N. Pennsylvania Avenue, Suite C, Winter Park, FL 32789.

s/ Chris Ballentine
CHRIS BALLENTINE
Florida Bar No. 434205
Fisher Rushmer, P.A.
390 N. Orange Avenue, Ste. 2200
Post Office Box 3753
Orlando, FL 32801-1642
(407) 843-2111
(407) 422-1080 (fax)
cballentine@fisherlawfirm.com
dburns@fisherlawfirm.com
Attorneys for Plaintiff

**and**

s/ Joseph C. Brock
JOSEPH C. BROCK
Florida Bar No. 356220
Law Offices of Steven "Woody" Igou
271 N. Pennsylvania Ave., Suite C
Winter Park, FL 32789
Telephone: (407) 622-1392
Fax: (407) 622-0451
jbrocklaw@gmail.com
woodyigoulaw@gmail.com
Co-counsel for Plaintiff

L:\CMB\Simon\PLEADING - FED COURT\msj.sbp.docx